TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-06-00371-CV




Johnie Jennings, Appellant


v.


Carolyn Bindseil, Dan Bindseil, Jannalyn Welch, Julian Welch, Allen Knodel, Betty
Knodel, Dale A. Friesenhahn, Horacio Ayala, Richard Aramendia, Daryl Payne, Melinda
Payne, Deanna S. Wilson, Rodney Wilson, D.M. Stuller, William Hall, Clyde Marbach,
Kurt Menking, Katherine Swoboda, Don Wallace, and Charles Wittler, Appellees




FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT

NO. C2005-0149B, HONORABLE JACK H. ROBISON, JUDGE PRESIDING



O P I N I O N


 Johnie Jennings appeals from a summary judgment granted in favor of a coalition
of landowners on Bindseil Lane in Comal County, Texas. (1) The Bindseil Landowners brought
suit against Jennings under the Texas Declaratory Judgment Act (TDJA) and the Texas Property
Code, seeking a declaratory judgment that a certain structure placed by Jennings on his property
violated a deed restriction prohibiting mobile homes on the property. The Bindseil Landowners
further sought a declaratory judgment that Jennings had proper notice that his act of placing the
structure on his property would violate the deed restriction. The trial court granted the Bindseil
Landowners' motion for summary judgment on their requests for declaratory relief. The trial
court also granted the Bindseil Landowners' request for a permanent injunction, preventing
Jennings from maintaining the structure on his property and requiring that he remove the
structure and all associated equipment. Because we hold that a question of fact exists regarding
whether the deed restriction prohibits the type of structure Jennings placed on his property, we
reverse the trial court's order and remand the case for trial. 


BACKGROUND

 In 1999, Jennings purchased 2.25 acres in rural Comal County from Allen and
Betty Knodel. In 2004, Jennings purchased a modular home, also referred to as industrialized
housing, for assembly on the property. (2) When Jennings's home was delivered to his property on 

December 22, 2004, a neighboring landowner objected to the delivery, claiming that the
structure violated a deed restriction against mobile homes that was applicable to Jennings's
property. 

 The deed restriction at issue was written by Dan Bindseil in 1978 and states:



No mobile home or homes or temporary houses or residences shall be placed
upon or remain upon the property conveyed hereby, nor shall such property be
used for the purposes of a tourist park, trailer court, mobile home park or
community, nor for an overnight camping or trailer facility.


 Jennings concedes that the deed restriction applies to his property and that he had
notice of the restriction when he purchased the property. However, Jennings argues that after
researching modular homes and contacting the state agency responsible for regulating modular
homes, he came to the conclusion that a modular home would not violate the deed restriction
against mobile homes.

 Jennings's home was delivered in the form of two factory-constructed modular
units mounted on a flat-bed truck and driven onto the property. The units were then connected
on site and attached to the property on a permanent concrete foundation. The home required
extensive on-site finish work, including completion of the roof and installation of dormers. The
house plans for the home call for front and back porches and a carport to be installed, but the
porches and carport were not completed, due to the injunction resulting from this litigation,
which prohibited any further work on the home. 

 On February 14, 2005, the Bindseil Landowners filed suit against Jennings to
enforce the deed restriction against mobile homes. Jennings counter-claimed, requesting a
declaratory judgment that his home was not subject to the restriction. The parties filed cross
motions for summary judgment, and the trial court granted the Bindseil Landowners' motion,
declaring that the deed restriction prohibits modular homes, that Jennings's home was in
violation of the deed restriction, and that Jennings was on notice that his acts were in violation of
the restriction. The court also granted a permanent injunction, prohibiting Jennings from
maintaining the home and requiring him to remove it from the property within 30 days. The trial
court denied the Bindseil Landowners' request to impose statutory penalties but granted their
request for attorney's fees. Jennings's traditional and no-evidence motions for summary
judgment were denied. 


 Jennings argues on appeal that the deed restriction does not apply to his modular
home. In the alternative, he argues that the deed restriction is ambiguous and that fact questions
exist regarding whether the deed restriction applies to his home and whether he was on notice
that his home violated the deed restriction. He further argues that the Bindseil Landowners are
not entitled to injunctive relief because they failed to conclusively establish that they would be
harmed by the presence of a modular home on his property.

 

STANDARD OF REVIEW

 Summary judgments are reviewed de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on
the same issues, and the trial court grants one motion and denies the other, the appellate court
considers the summary-judgment evidence presented by both sides, determines all questions
presented, and if the reviewing court finds that the trial court erred, renders the judgment the trial
court should have rendered. Id.

 The Bindseil Landowners filed a traditional motion for summary judgment and
Jennings filed both traditional and no-evidence motions for summary judgment. To prevail on a
traditional motion for summary judgment, the movant must show that there is no issue of
material fact and that it is entitled to judgment as a matter of law. TX Far West, Ltd. v. Texas
Invs. Mgmt., Inc., 127 S.W.3d 295, 301 (Tex. App.--Austin 2004, no pet.). Evidence favorable
to the non-movant is taken as true and every reasonable inference must be indulged in favor of
the non-movant and any doubts resolved in its favor. Id.

 A no-evidence motion for summary judgment must be granted if the moving party
asserts that there is no evidence of one or more essential elements of a claim or defense on which 

the non-movant would have the burden of proof at trial, and the nonmovant fails to produce
more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on
those elements. Tex. R. Civ. P. 166a(i); Cox Texas Newspapers, L.P. v. Penick, 219 S.W.3d 425,
432-33 (Tex. App.--Austin 2007, pet. denied).

 We review a trial court's grant of injunctive relief for an abuse of discretion. 
Operation Rescue-Nat'l v. Planned Parenthood, 975 S.W.2d 546, 560 (Tex. 1998). An abuse of
discretion occurs when a trial court acts in an unreasonable or arbitrary manner, or without
reference to guiding rules or principles. Holubec v. Brandenberger, 214 S.W.3d 650, 657 (Tex.
App.--Austin 2006, no pet.).


DISCUSSION

Deed Restrictions

 Covenants restricting the free use of land are not favored by the courts, but will be
enforced if they are clearly worded and confined to a lawful purpose. Wilmoth v. Wilcox, 734
S.W.2d 656, 657 (Tex. 1987). When the language of a restrictive covenant is unambiguous, the
Texas Property Code requires that the restrictive covenant be liberally construed to give effect to
its purpose and intent. Tex. Prop. Code Ann. § 202.003(a) (West 2007). However, if the
language is found to be ambiguous, the restrictive covenant is construed strictly against the party
seeking to enforce the restriction, and all doubts must be resolved in favor of the free and
unrestricted use of the property. Wilmoth, 734 S.W.2d at 657. The words and phrases in the
restriction must be given their commonly accepted meaning as of the date the restriction was
written and must not be enlarged, extended, changed, or stretched by construction. Id. at 657-58.


 Restrictive covenants are subject to the general rules of contract construction. 
Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). If a restrictive covenant is subject to
more than one reasonable interpretation so that the intention of the parties cannot be determined,
the restriction is ambiguous. See Columbia Gas Transmission Co. v. New Ulm Gas, Ltd., 940
S.W.2d 587, 589 (Tex. 1996). Whether a restrictive covenant is ambiguous is a question of law
that must be decided by examining the covenant as a whole in light of the circumstances present
when it was drafted. See id. 

 The deed restriction on Jennings's property prohibits "mobile homes." To
determine if ambiguity exists, we must look to the common and ordinary meaning of the term
"mobile home" as of the date the restriction was drafted to determine if the prohibition on
mobile homes is susceptible to two or more meanings. See Dempsey v. Apache Shores Prop.
Owners Assoc., Inc., 737 S.W.2d 589, 592 (Tex. App.--Austin 1987, no writ).

 "Mobile home" is a term generally used to describe factory-built residential
structures. The terminology used to describe these structures has evolved over the years to keep
pace with innovations in technology and design. The original term generally associated with
such housing was "house trailer." As the Texas Supreme Court observed in Wilmoth, 734
S.W.2d at 658, "[i]n the late 1960's the term 'mobile home' began to replace the term 'house
trailer.' In the late 1970's the industry applied the term 'manufactured homes' to the products,
replacing the name 'mobile home.'" As the industry began to make design improvements and
use different names to avoid negative connotations associated with original types of factory-built
housing, legislative changes were made to reflect the new terminology. See Dempsey, 737
S.W.2d at 592 ("At the time the restricted covenants were drafted [between 1968 and 1972],
there was statutorily only the 'mobile 

home.' When the need became apparent, legislation was enacted to protect consumers and the
terms 'manufactured homes,' 'modular homes,' and later 'industrialized housing' were
employed . . . .").

 As the terms used to describe various forms of factory-built housing have
evolved, the regulation of such structures has also become highly specialized. Currently,
manufactured housing is regulated by the Texas Department of Housing and Community Affairs
(TDHCA), while modular homes are regulated by the Texas Department of Licensing and
Regulation (TDLR). (3) However, this Court has recognized that, while a statutory scheme has
evolved that differentiates manufactured homes from modular homes, "[t]he differences between
the two are technical and minor." Id. 

 Jennings argues that the current regulatory, statutory, and other distinctions
between his home and other types of factory-built housing are sufficient to exclude his home
from the language of the deed restriction. According to a letter from TDLR sent to Jennings on
February 22, 2005:


The primary difference between an industrialized (modular) home and a
manufactured (HUD) home are:


a. The codes to which the homes are built. Modular housing in the State of
Texas is constructed to the same codes as site built housing. Manufactured
housing is constructed to Federal HUD code standards;


b. Modular homes must be installed on a permanent foundation system;



c. Titles are not issued for modular homes. Once installed the home becomes
part of the real property; and


d. A municipality may not discriminate against modular homes built under the
IHB program from being placed inside city limits or restrict these buildings to
areas zoned for "manufactured" housing. (Please reference § 1202.251(b) of the
Occupations Code).


 Jennings emphasizes the fact that municipalities may not discriminate against
modular homes in zoning decisions or adopt regulations that are more restrictive for modular
homes than for site-built homes, including restricting the location of modular homes to areas
zoned for manufactured housing. Significantly, however, while a municipality may not adopt a
regulation "that is more restrictive for industrialized housing than that required" for site-built
housing, the statute further states, "This section does not . . . affect deed restrictions." Tex. Occ.
Code Ann. § 1202.253(e), (f)(2) (West 2004 & Supp. 2007). This language makes it clear that
the legislature recognized the existence of deed restrictions prohibiting factory-built housing and
indicated a clear intention that such restrictions were to remain unaffected by subsequent
regulatory and statutory distinctions.

 The deed restriction at issue here was written in 1978, before the terms
"manufactured housing," "modular housing," or "industrialized housing" were commonly used. 
Because we must "look to the common and ordinary meaning of the term 'mobile home' as of
the date the covenant was drafted," Dempsey, 737 S.W.2d at 592, the current distinctions
between modular homes and manufactured homes are not dispositive. As we noted in Dempsey,
"[t]he covenant drafters had no way to predict these subsequent technical statutory distinctions,
and the language they chose should be viewed in that light." Id. at 593.


 Because the covenant drafters did not have the benefit of subsequent technical
statutory distinctions at the time the deed restriction on "mobile homes" was written, we hold
that the covenant is unambiguous in its prohibition of mobile homes and any generic successors,
regardless of minor changes in construction technology, design, or regulation. (4) To hold
otherwise would essentially require drafters of restrictive covenants to foresee an infinite array
of technological advances that might take place in the future and to draft a restriction prohibiting
structures described by terminology that does not yet exist. Furthermore, "restrictive covenants
would be rendered meaningless if they could be implicitly subverted by legislatively changing
the name of that which is prohibited." Id. at 593. Therefore, we hold that the restrictive
covenant prohibiting mobile homes is unambiguous as written and must be liberally construed to
give effect to its purpose and intent, which was to prohibit mobile homes and their generic
successors. See Tex. Prop. Code Ann. § 202.003(a). Thus, the question at hand is whether
Jennings's home constitutes a mobile home or a generic successor, notwithstanding the label
used by statute or regulatory authorities to describe such a structure in 2008.


 However, when we held that the deed restriction against mobile homes in
Dempsey was unambiguous, a jury had already made a factual finding that the structure at
issue--a double-wide manufactured home--actually qualified as a mobile home. See id. at 593
("Double-wides were considered 'mobile homes' at the time the covenants were drafted and the
jury found, based on considerable evidence, that despite improvements in quality and
appearance, they are still 'mobile homes' today. We cannot say that finding is legally or
factually erroneous."). 

 In the present case, we do not have the benefit of a jury determination regarding
whether the structure Jennings placed on his property constitutes a mobile home or a generic
successor as prohibited by the deed restriction. (5) As a result, summary judgment is improper
because a fact question exists regarding whether Jennings's home qualifies as the type of
structure that the deed restriction prohibits. Therefore, we reverse the trial court's judgment
declaring that Jennings's home violates the deed restriction against mobile homes and remand
the cause for a determination of whether Jennings's home constitutes a mobile home or a generic
successor of a mobile home as prohibited by the deed restriction, giving effect to the liberal
construction required for unambiguous deed restrictions. See Tex. Prop. Code Ann. §
202.003(a).



Notice

 A purchaser is bound only by those restrictive covenants of which he has actual or
constructive notice. Davis v. Huey, 620 S.W.2d 561, 565-66 (Tex. 1981). Jennings concedes
that he had notice of the deed restriction prohibiting mobile homes, but argues that because of
his independent research and the information he received from government agencies, he was
acting on a good-faith belief that his home did not violate the restriction. Jennings's good-faith
belief, however, is irrelevant. A purchaser is bound by restrictive covenants of which he has
notice, regardless of whether he believed that his actions violated the restriction. See Pheasant
Run Homeowners Assoc., Inc. v. Kastor, 47 S.W.3d 747, 753-54 (Tex. App.--Houston [14th
Dist.] 2001, pet. denied) (holding that property owners who are aware of deed restrictions and
accompanying guidelines are considered to be on notice of such restrictions despite believing
that guidelines are unclear and inapplicable); Tien Tao Assoc., Inc. v. Kingsbridge Park Cmty.
Assoc., Inc., 953 S.W.2d 525, 528 (Tex. App.--Houston [1st Dist.] 1997, no pet.) (holding that
property owner could not argue it had no notice of deed restrictions simply because guidelines
were unclear when owner acknowledged having copy of such restrictions). 

 However, because we have determined that a fact issue exists regarding whether
Jennings's home is prohibited by the deed restriction, we also reverse and remand the issue of
whether Jennings had notice that his actions in placing such a structure on his property violated
the deed restriction. We cannot conclude that Jennings was on notice that his actions violated
the restriction when there has been no final determination regarding whether a violation actually 

occurred. As a result, the trial court's declaratory judgment that Jennings had notice that his
actions violated the restriction is also reversed and remanded. 


The Permanent Injunction

 Jennings argues that the Bindseil Landowners have not established that they will
suffer an actual and substantial injury because of the presence of a modular home on Jennings's
property. While the general rule is that one seeking injunctive relief must establish an actual and
substantial injury, "[t]here is a well-settled exception to the general rule in restrictive covenant
cases." Gigowski v. Russell, 718 S.W.2d 16, 21 (Tex. App.--Tyler 1986, no writ.). A covenant
restricting the use of land may be enforced by injunction without a showing of any particular
amount of damages, provided there is a distinct or substantial breach of the restrictive covenant. 
Id. However, because we have determined that the Bindseil Landowners failed to conclusively
establish through summary-judgment evidence that Jennings committed a distinct or substantial
breach of the deed restriction against mobile homes, we also reverse the trial court's judgment
issuing a permanent injunction.


Attorney's Fees

 In its order granting summary judgment in favor of the Bindseil Landowners, the trial
court granted the Bindseil Landowners' request for attorney's fees. Because we have reversed
and remanded this case for a factual determination regarding whether the structure placed on
Jennings's property was in violation of the deed restriction against mobile homes, we also
remand the issue of attorney's fees for the trial court's reconsideration pending the outcome of
the necessary factual determination.


CONCLUSION

 Because a genuine issue of material fact exists regarding whether the structure
Jennings placed on his property constitutes a mobile home or a generic successor as prohibited
by the deed restriction applicable to his property, we reverse the trial court's judgment and
remand this case for further proceedings consistent with this opinion. 


__________________________________________

 Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson;

 Concurring and Dissenting Opinion by Justice Waldrop

Reversed and Remanded

Filed: February 22, 2008
1. For convenience, we will refer to the appellees collectively as the Bindseil
Landowners.
2. Because this case revolves around the applicability of certain terminology
to describe various types of housing, we will use the terms "modular home" and
"industrialized housing" interchangeably to refer to the type of structure defined in
§ 1202.002(a) of the Texas Occupations Code. We will use the term "manufactured
housing" to refer to the type of structure defined in § 1201.003(9) of the Texas
Occupations Code.


 Industrialized housing is governed by chapter 1202 of the Texas Occupations
Code, while manufactured housing is governed by chapter 1201. "Industrialized
housing" is defined as:


[A] residential structure that is: 


(1) designed for the occupancy of one or more families; 


(2) constructed in one or more modules or constructed using one or more modular
components built at a location other than the permanent site; and 


(3) designed to be used as a permanent residential structure when the module or the
modular component is transported to the permanent site and erected or installed on
a permanent foundation system.


Tex. Occ. Code Ann. § 1202.002(a) (West 2004).


 "Manufactured housing" is defined as "a HUD-code manufactured home or
a mobile home." Tex. Occ. Code Ann. § 1201.003(15) (West 2004 & Supp. 2007). 
According to § 1201.003(9) of the Texas Occupations Code:


 "HUD-code manufactured home":


(A) means a structure:


(i) constructed on or after June 15, 1976, according to the rules of the United
States Department of Housing and Urban Development;

 

 (ii) built on a permanent chassis;


(iii) designed for use as a dwelling with or without a permanent foundation
when the structure is connected to the required utilities;

 

 (iv) transportable in one or more sections; and


(v) in the traveling mode, at least eight body feet in width or at least 40 body
feet in length or, when erected on site, at least 320 square feet;


(B) includes the plumbing, heating, air conditioning, and electrical systems of the
home; and


(C) does not include a recreational vehicle as defined by 24 C.F.R. Section
3282.8(g).


Tex. Occ. Code Ann. § 1201.003(9) (West 2004 & Supp. 2007).


 The statutory definition of "mobile home" is essentially identical to that of
a "HUD-code manufactured home" except that a mobile home is a structure
constructed before June 15, 1976 and is not required to meet HUD requirements. See
Tex. Occ. Code Ann. § 1201.003(17) (West 2004 & Supp. 2007). 
3. Jennings contends that his home was assigned specific label numbers to
certify that it is considered a modular home by TDLR and that it was manufactured
in accordance with the requirements of the Texas Industrialized Building Code
Council.
4. As the Tyler court of appeals has aptly stated:


To a greater or lesser extent, almost all the machines and equipment with which we
are most familiar have been dramatically improved in recent times. . . . But the most
radical advances rarely result in change that so overflows the basic definition of an
object so as to require its re-classification. Airplanes and automobiles have been
spectacularly altered and improved over this century, but they remain airplanes and
automobiles. A 1981 Cadillac bears little resemblance to a model-T Ford, but it is
still an automobile.


Gigowski v. Russell, 718 S.W.2d 16, 19 (Tex. App.--Tyler 1986, writ ref'd).
5. Due to the differences between manufactured homes and modular homes,
we acknowledge that the issue of whether Jennings's home constitutes a "mobile
home" or a generic successor may be a closer question than the determination made
in Dempsey, 737 S.W.2d at 591, and Wilmoth, 734 S.W.2d at 657, that a double-wide
manufactured home is a "mobile home." While Jennings's home may not have
differed significantly in appearance from two double-wide manufactured homes
labeled as "modular units" and connected on site, such a determination is necessarily
a fact issue for the jury to decide.