# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00371-CV

**Johnie Jennings, Appellant**

**v.**

**Carolyn Bindseil, Dan Bindseil, Jannalyn Welch, Julian Welch, Allen Knodel, Betty Knodel, Dale A. Friesenhahn, Horacio Ayala, Richard Aramendia, Daryl Payne, Melinda Payne, Deanna S. Wilson, Rodney Wilson, D.M. Stuller, William Hall, Clyde Marbach, Kurt Menking, Katherine Swoboda, Don Wallace, and Charles Wittler, Appellees**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. C2005-0149B, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

I agree with the majority that the summary judgment in favor of the Bindseil Landowners should be reversed. However, I do not agree that this case presents a material fact issue for determination by a trier of fact. Consequently, I respectfully disagree with the majority on the issue of remand, and I would render judgment in favor of Jennings as a matter of law.

As an initial matter, I question the majority's conclusion that the term "mobile home" is unambiguous yet we cannot know whether the Jennings structure is a mobile home until a fact-finder considers the issue. The problem with this position is illustrated by imagining two cases going to jury trial on the question of whether certain structures are mobile homes under the deed restriction at issue here. One jury considers this case and a second jury considers a later filed case of a person

two lots down from Jennings attempting to erect an identical structure. One jury concludes that the structure is a "mobile home" and, therefore, the landowner is in violation of the deed restriction. The other jury sees the issue differently and concludes the structure is not a "mobile home," thus, finding the landowner in compliance with the restriction.[1] If such inconsistent results by jury determination on a case-by-case basis are allowable under the majority's view, the term "mobile home" in this context is subject to more than one reasonable interpretation and must, therefore, be ambiguous.[2] If such inconsistent results are not acceptable, then the question of whether a particular structure qualifies as a "mobile home" under the deed restriction at issue cannot turn on a jury determination on a case-by-case basis and must be a question of law. In short, the term "mobile home" cannot be both unambiguous and susceptible to complete reinterpretation on a case-by-case basis.

Although the term "mobile home" can hardly be said to be a term of precision, it is not ambiguous with respect to whether it applies to the structure at issue, and the determination of this question is a question of law.[3] I believe the key to the analysis in this case is whether the structure is designed to be a permanent residential structure erected and installed on a permanent foundation system. *See* Tex. Occ. Code Ann. § 1202.002(a) (West 2004). It is not disputed that the

---

[1] Which jury decides which case is not relevant to the analysis.

[2] Under the majority's view, each jury would decide what the term "mobile home" means anew, creating the distinct possibility of entirely inconsistent application of the deed restriction to the landowners bound by it.

[3] This does not foreclose the possibility that the term "mobile home" could be ambiguous in some contexts, i.e. that it could be subject to more than one reasonable interpretation in a given application. However, I do not believe the term is ambiguous when applied on the facts presented in this case.

structure at issue in this case is to be a permanent residential structure erected and installed on a permanent foundation system. This undisputed, material fact is dispositive of whether the structure is a "mobile home" as a matter of law.

While there is little in the term "mobile home" that can be viewed as definitive, the word "mobile" is certainly present and has to mean something. At the very least, we can know that the restriction in this case only applies to homes that are, in fact, in some real sense *mobile*. It is undisputed here that the structure in question is only mobile in the sense that any structure that can conceivably be moved intact after it is erected is mobile. If this structure is "mobile," then virtually every pier-and-beam home ever built is "mobile," as well as many structures no reasonable person would ever describe as "mobile homes."

While the Jennings structure's aesthetic qualities as a "nice enough home for our street" might be in the eye of the beholder and subject to debate, what cannot be legitimately debated is whether the structure is actually mobile. It is designed to be a permanent home, permanently attached to real property as a fixture, and installed on a permanent foundation. Although technically moveable at some point in the future as many homes are, it is designed to be as much of a permanent home as any that are built. This is not true of manufactured homes (as defined in both federal and Texas law), trailer homes, homes with permanent chassis, or other living spaces that are specifically designed to be mobile. Thus, based on this uncontroverted, material fact the structure at issue here does not qualify as a *mobile* home.

Both the Bindseil Landowners and the majority place significance on the fact that the Jennings home was built in modular sections off-site, delivered to the site, and then assembled.

3

I do not find the manner in which a structure that is designed to be a permanent fixture is delivered to its permanent site to be helpful to the analysis of whether it is a "mobile home." If Jennings had moved a classic Victorian home to his lot that had been built elsewhere and was large enough that it had to be moved in sections and reassembled, no one would be arguing that the house is a mobile home. Similarly, if a house that was built in exactly the same fashion as any typical on-site construction were built off-site, trucked to the site in moveable sections, and reassembled on a permanent foundation, no one would think of describing it as a "mobile home." The reason for this is that we do not focus on the place of construction or means of delivery to a site when determining whether a structure should be described as a mobile home. We focus on its *mobility*. This is further illustrated by imagining a person building a structure entirely on site that is identical in both design and quality to a modular home (i.e., it looks just like a modular home), and that is designed as a permanent residence attached to a permanent foundation. This structure would not be a mobile home because it is not mobile—not because it was built on-site. Thus, how a structure gets to a site cannot be a significant part of the analysis of whether that structure is a mobile home or not. More significant is whether the structure is designed to be mobile or permanent, and whether it is, in fact, a mobile structure.

This permanence vs. mobility feature is the primary difference between industrialized (or modular) housing and manufactured (or mobile) homes. It is also the underlying reason why manufactured/mobile homes are titled and taxed like cars and industrialized/modular housing is considered a fixture on real property and is financed, titled, and taxed as real property.[4] The

---

[4] In *Dempsey v. Apache Shores Property Owners Ass'n*, 737 S.W.2d 589 (Tex. App.—Austin 1987, no writ), this Court (without any explanation or reasoning) described the

permanence vs. mobility distinction is also a means of analyzing the few Texas cases decided in this area consistently with one another. Cases deciding that the structure is barred by a deed covenant restricting mobile homes have involved structures designed to be mobile, with permanent chassis, and fitting the definition of a manufactured home. *See Wilmoth v. Wilcox*, 734 S.W.2d 656 (Tex. 1987); *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283 (Tex. App.—San Antonio 1999, pet. denied); *Dempsey v. Apache Shores Prop. Owners Ass'n*, 737 S.W.2d 589 (Tex. App.—Austin 1987, no writ). Cases deciding the structure does not violate such a deed restriction have involved structures that are consistent with industrialized housing/modular homes that are designed to be permanent. *See Ussery Invs. v. Canon & Carpenter, Inc.*, 663 S.W.2d 591 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd w.o.j.). The permanence vs. mobility feature was also relied on by the Tennessee Supreme Court in *Williams v. Fox*, 219 S.W.3d 319 (Tenn. 2007), in a case involving nearly identical facts to this case. In a well-reasoned opinion, the Tennessee Supreme Court concluded that the modular home at issue in that case did not violate a restrictive covenant barring "mobile homes" as a matter of law because it was not designed to be mobile, fit the statutory definition of industrialized/modular housing, and was designed to be affixed to a site permanently via a permanent foundation system.

I agree with the approach of the Tennessee Supreme Court in *Fox*. I am of the opinion that whatever else the term "mobile home" might mean it certainly requires that the structure

differences between manufactured homes and industrialized housing as "technical and minor." This language is both unfortunate and erroneous. The two different types of structures have completely different and detailed statutory schemes that apply to them. One type is designed to be mobile while the other is not. They are owned and transferred differently and they are regulated differently. They are treated differently for zoning purposes. In fact, the differences are significant enough to warrant the structures being regulated differently as both federal and state law recognize.

5

be *mobile* in some fashion that is more than simply being moveable after construction. I would hold that industrialized/modular housing as defined in Texas Occupations Code section 1202.002(a) is not a "mobile home" as that term is used in the deed restriction at issue in this case as a matter of law. The structure in question complies with the definition of industrialized housing in the occupations code and is designed to be permanently affixed to the site in question by means of a permanent foundation system. It is a fixture and is titled, held, and taxed as real property. The regulatory and statutory distinction between industrialized housing (not mobile) and modular homes (mobile) is sensible, and provides a method of distinguishing between structures that are permanent homes and those that are mobile homes. The Jennings structure (whatever its aesthetic qualities) meets the definition of industrialized housing, is a permanent structure, and therefore, is not a "mobile home" as a matter of law. Consequently, I concur in the judgment of the court reversing the grant of summary judgment in favor of the Bindseil Landowners, and I respectfully dissent in the judgment of the court remanding the case for trial. I would render judgment in favor of Appellant Jennings.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Filed: February 22, 2008

6