

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THOMAS GEORGE and JENIFER GEORGE, | § | No. 08-22-00069-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | |
| v. | § | 207th Judicial District Court |
| | § | |
| CYPRESS SPRINGS PROPERTY OWNERS ASSOCIATION, | § | of Comal County, Texas |
| | § | (TC# C2018-1094B) |
| Appellee. | § | |

## **O P I N I O N**

This case concerns a dispute that arose when Appellants Thomas George and Jenifer George (collectively the Georges) attempted to install a house on their property that purportedly violated Appellee Cypress Springs Property Owners Association's (Cypress Springs) restrictive covenants. After Cypress Springs denied the Georges permission to install the house and the Georges did not remove the house from their property, Cypress Springs sued the Georges to enforce the restrictions, to obtain a permanent injunction to require removal of the house, and for statutory damages and attorney's fees. The Georges counterclaimed for a declaratory judgment that the house did not violate Cypress Springs's covenants and for attorney's fees. A jury found in favor of Cypress Springs and the trial court issued a final judgment and permanent injunction

against the Georges. The Georges raise six issues on appeal. For the following reasons, we affirm the trial court's judgment.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background

Located in Comal County, Texas, the Cypress Springs subdivision consists of approximately 2,700 acres of land with the vast majority of the property subdivided into five hundred five-acre lots. In 1993, Cypress Springs filed a "Declaration of Covenants, Conditions and Restrictions" (the Declaration), which provided the following under the "Use Restrictions" section:

> Section 3.01 <u>Single Family Residential Construction.</u> No building shall be erected, altered, placed or permitted to remain on any Tract other than one dwelling unit per each Tract to be used for residential purposes except that one guest/servants house may be built provided said guest/servants house must contain a minimum of 500 square feet and be built after or while the main dwelling is being built and be approved by the Architectural Control Committee. Detached garages, work shops, and barns may be constructed on the property prior to the main dwelling being built, so long as they are of good construction, kept in good repair, and are not used for residential purposes. All structures must be approved in writing by the Architectural Control Committee prior to being erected, altered or placed on the property. The term "dwelling" does not include double wide manufactured homes, or single wide mobile homes, and said homes are not permitted within the Subdivision. All dwellings must have at least 1400 square feet of living area, excluding porches, and be built with new construction material. Any building, structure or improvement commenced on any tract shall be completed as to exterior finish and appearance within six (6) months from the commencement date . . . .

> Section 3.03 <u>Location of the Improvements upon the Tract.</u> No building of any kind shall be located on any Tract nearer than twenty-five (25) feet to the side property line or no nearer than one hundred (100) feet to any public road and no nearer than fifty (50) feet to the rear property line . . . .

> Section 3.04 <u>Use of Temporary Structures.</u> No structure of a temporary character, whether trailer, basement, shack, garage, barn or other outbuilding shall be

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

maintained or used on any Tract at any time as a residence, either temporarily or permanently . . . .

And under the section titled "Architectural Control Committee," the Declaration provided:

Section 4.01 Basic Control.

(a) No building or other improvements of any character shall be erected or placed, or the erection or placing thereof commenced or changes made in the design or exterior appearance thereof (excluding, without limitation, painting, staining or siding), or any addition or exterior alteration made thereto after original construction, or demolition or destruction by voluntary action made thereto after original constructed [sic], on any Tract in the Subdivision until the obtaining of the necessary approval (as hereinafter provided) from the Committee of the construction plans and specification for the construction or alteration of such improvements or demolition or destruction of existing improvements by voluntary action. Approval shall be granted or withheld based on matters of compliance with the provisions of this instrument.[2]

Under the Declaration, Cypress Springs is governed by a Board of Directors and has an Architectural Control Committee (ACC) responsible for approving construction by homeowners on the subdivision lots. Cypress Springs provided a copy of the Declaration to every new purchaser of property within the subdivision.

In May 2018, the Georges purchased a lot in Cypress Springs and began to construct a second house on the property. The house had corrugated steel walls and cedar siding. Jeff Wieters, who was on the Cypress Springs Board of Directors, testified that on May 8, 2018, he received several complaints about the Georges' house via phone calls and messages from residents using Next Door, a social-media application. That same day, Wieters drove to the Georges' property and saw a semi-truck parked on the property with the complained-of house sitting on a trailer. Wieters described the house as an "approximately[] 15-by-50 [feet] rectangle, [and it] looked like a manufactured home/mobile home."

---

[2] On appeal, the Georges do not contest that their property was subject to the Declaration.

After Wieters introduced himself and learned that the Georges intended to use the house for residential purposes, he asked Thomas if they had obtained ACC approval to place the house on the property. Thomas responded that he was unaware the ACC or a property-owners association existed that would preclude him from placing the house on the property. Wieters told Thomas that the house would not be approved for residential use because it would be in violation of Cypress Springs's covenants, to which Thomas, upset, responded that "it's [his] property" and that he would "fight [Wieters]" over the house. Wieters asked why Thomas thought the house would be approved, and Thomas responded that the builder and seller of the house had told him that he had sold many like it in the neighborhood. Later that day, Wieters returned to the Georges' property and saw that the house had been taken off the trailer and placed on top of cinder blocks on the property. Wieters immediately filed a written notice of complaint to the Board of Directors, contending that the presence of the house on the Georges' property possibly violated §§ 3.01 and 3.04 of the Declaration. The Georges closed on the property the following week.

Two days after Wieters filed the complaint, Cypress Springs issued a letter informing the Georges that they were in violation of §§ 3.01, 3.03, and 3.04 of the Declaration by installing the house. The letter directed the Georges to either respond in writing within ten days or remove the house from the property. In the interim, the Georges connected and installed electricity, a septic tank, television cable, and air-conditioning in the house, which they anchored to the ground add added "hurricane straps." Wieters and other members of the Cypress Springs board subsequently took photographs of the house.

The Georges responded in writing on May 21, 2018, acknowledging that they had violated the spacing requirements for the house set forth in § 3.03 of the Declaration. However, they contended that the house was not a "manufactured/mobile building" under the Declaration, but

4

claimed it was instead a "prefabricated home" that their parents would live in. Cypress Springs responded on June 1, 2018, with another letter stating that because the aforementioned violations had not been remedied, the Board of Directors had voted on the matter and were assessing $600 in fines against the Georges for violations of §§ 3.01, 3.03, and 3.04. The letter ordered the Georges to cure the violations or risk assessment of further fines or legal action.

## B.     Procedural history

On June 27, 2018, Cypress Springs sued the Georges for (1) a permanent injunction to remove from the Georges' property all structures that had not previously been approved by the ACC, (2) statutory damages under TEX. PROP. CODE ANN. § 202.004, and (3) attorney's fees and costs. The Georges counterclaimed for a declaratory judgment that the house did not violate the Declaration and for attorney's fees. The Georges also filed a traditional and no-evidence motion for summary judgment seeking dismissal of Cypress Springs's claims associated with the claimed violations of the Declaration, and the trial court denied the motion by written order.

The case was tried to a jury, which returned a verdict in favor of Cypress Springs. Specifically, the jury found that the Georges had violated §§ 3.01 and 4.01(a) of the Declaration. The trial court entered a final judgment enjoining the Georges to remove the house from their property and awarding Cypress Springs statutory damages, attorney's fees, and post-judgment interest. The Georges filed a motion for new trial that was overruled by operation of law. This appeal followed.

## II.   ISSUES ON APPEAL

The Georges appeal the trial court's judgment in six issues, arguing that (1) the trial court erred by denying their motion for summary judgment (Issue One); (2) the evidence was legally and factually insufficient to show that they violated §§ 3.01 and 4.01(a) of the Declaration (Issues

Two and Five); (3) the trial court abused its discretion by denying their request for jury instructions as to whether Cypress Springs afforded the Georges an opportunity to cure the alleged violations and as to whether Cypress Springs "acted in an arbitrary and capricious manner in denying [the Georges'] application to have dwellings on its property approved by the [ACC]" (Issues Three and Four); and (4) the trial court's judgment erroneously contained findings of fact on matters not submitted to the jury or necessarily implied by the jury's findings (Issue Six). In the interest of clarity and brevity, we address the Georges' claims simultaneously where possible.

## III. SUMMARY JUDGMENT

In their first issue, the Georges argue that the trial court erred by denying their traditional and no-evidence motion for summary judgment because the evidence did not prove that the house was not a "remanufactured home" or a "mobile home" under the definitions of those terms in the Declaration. However, absent several statutory exceptions, "[t]he general rule is that a denial of a summary judgment is not reviewable on appeal because it is not a final judgment." *Enriquez v. Khouri*, 13 S.W.3d 458, 460 (Tex. App.—El Paso 2000, no pet.) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996)); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) (listing grounds for appeal from an interlocutory order from a trial court).

Here, the trial court denied the Georges' summary-judgment motion and the case was later tried to a jury on its merits. The Georges do not challenge the trial court's order under one of the statutory exceptions for reviewing summary-judgment orders in § 51.014(a) or some other exception to the rule precluding the review of summary-judgment motion denials. For these reasons, we lack jurisdiction to consider the merits of this claim. *See Enriquez*, 13 S.W.3d at 460; *see also Educap, Inc. v. Mendoza*, No. 03-18-00686-CV, 2019 WL 4727071, at *2 (Tex. App.— Austin Sept. 27, 2019, no pet.) (mem. op.) ("Where a motion for summary judgment is denied by

the trial court and later tried on its merits, the order denying the motion for summary judgment is not reviewable on appeal.").

Accordingly, we overrule the Georges' first issue.

## IV.   SUFFICIENCY OF THE EVIDENCE

In their second and fifth issues, the Georges argue that the evidence is legally and factually insufficient to support the jury's findings that the Georges violated of §§ 3.01 and 4.01(a) of the Declaration. In essence, the Georges contend that the evidence is legally and factually insufficient to establish: (1) the house at issue was not a "manufactured home" or a "mobile home"; and (2) that the house was installed without prior written approval of the ACC as required.

### A.   Standard of review

Legal and factual sufficiency arguments both challenge the sufficiency of the evidence to support determinations by the fact finder, but each invoke a different standard of review. *Wolf v. Starr*, 617 S.W.3d 898, 903 (Tex. App.—El Paso 2020, no pet.). Under a legal sufficiency or "no evidence" challenge, we will uphold a jury's finding if it is supported by "[a]nything more than a scintilla of evidence." *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014) (quoting *Formosa Plastics Corp. USA. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)). More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach the finding or judgment being challenged. *See Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). On the other hand, if the evidence is so weak that it only creates a "mere surmise or suspicion" of the existence of a vital fact, "it is regarded as no evidence." *Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

In resolving a no-evidence challenge, we view the evidence in the light most favorable to the finding or judgment, and "indulge every reasonable inference that would support it," crediting

favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). It is the province of the trier of fact to draw from the evidence whatever inferences it wishes, so long as more than one inference is possible. *Id.* at 821–22. Thus, we will sustain a legal sufficiency or "no evidence" challenge only if the record shows: "(a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact." *Id.* at 810 (citation omitted).

When a party challenges the factual sufficiency of the evidence, it concedes that conflicting evidence was presented at trial, but argues that the evidence against a finding or judgment is "so great" that to find the opposite was erroneous. *See Wolf*, 617 S.W.3d at 903. Factual-sufficiency challenges require courts of appeals to weigh all the evidence. *See Eggemeyer v. Hughes*, 621 S.W.3d 883, 890 (Tex. App.—El Paso 2021, no pet.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)). A factual-sufficiency challenge is sustained only when the evidence supporting the finding is so weak "as to be clearly wrong and unjust," or when the finding is "manifestly unjust," "shock[s] the conscience," or "clearly demonstrate[s] bias." *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In applying either standard, we remain mindful that the trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re Estate of Scott*, 601 S.W.3d 77, 88 (Tex. App.—El Paso 2020, no pet.); *see also McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The trier of fact may resolve conflicts in the evidence and choose to believe one witness and disbelieve another, and we must not impose our opinion to the contrary if the trier

of fact's resolution "falls within [the] zone of reasonable disagreement." *City of Keller*, 168 S.W.3d at 822.

**B.      Applicable law**

*1.      Restrictive covenants generally*

As a general matter, covenants restricting the free use of land are not favored by courts, but they will be enforced if they are clearly worded and confined to a lawful purpose. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987). When the restrictive covenant's language is unambiguous, we are required to construe the covenant liberally to give effect to its intent and purpose. TEX. PROP. CODE ANN. § 202.003(a). If the language is ambiguous, the restrictive covenant is construed against the party seeking its enforcement and all doubts must be resolved in favor of the free use of the property. *Wilmoth*, 734 S.W.2d at 657. The words and phrases in the restriction are to be given their commonly accepted meaning at the time the restriction was written and should not be enlarged, extended, changed, or stretched by construction. *Id.* at 657–58.

*2.      Definitions of "mobile home" and "manufactured home"*

On appeal, the Georges argue in their issue challenging the summary-judgment order that §§ 1201.003 and 1201.004 of the Texas Occupations Code controlled the definitions of "manufactured home" and "mobile home" as applied to § 3.01 of the Declaration. The Georges incorporate this argument into their challenges to the factual and legal sufficiency of the evidence supporting their violations of the Declaration, positing that those statutes should govern the definition of those terms and whether sufficient evidence supported the jury's implied finding that the Georges' house constituted a "manufactured home" or "mobile home."

Section 1201.003 defines "manufactured home" as "a HUD-code manufactured home or a mobile home." TEX. OCC. CODE ANN. § 1201.003(18). That statute defines "mobile home" as:

a structure:

(i)    constructed before June 15, 1976;

(ii)   built on a permanent chassis;

(iii)  designed for use as a dwelling with or without a permanent foundation when the structure is connected to the required utilities;

(iv)  transportable in one or more sections; and

(v)   in the traveling mode, at least eight body feet in width or at least 40 body feet in length or, when erected on site, at least 320 square feet.

*Id.* § 1201.003(20). Section 1201.004 provides:

> The definitions of "mobile home," "HUD-code manufactured home," and "manufactured housing" provided by Section 1201.003 are binding as a matter of law on each person and agency in this state, including a home-rule municipality or other political subdivision. A mobile home is not a HUD-code manufactured home and a HUD-code manufactured home is not a mobile home for any purpose under state law. Those terms may not be defined in a manner that is not identical to the definitions provided by Section 1201.003.

*Id.* § 1201.004.

On appeal, the Georges argue that the final sentence in § 1201.004 requires the definitions of "manufactured home" and "mobile home" in § 1201.003 to apply to restrictive covenants, such as the restrictions contained in the Declaration. The Georges further argue that because Cypress Springs did not contain a separate definition of those terms in the Declaration, the statutory definitions must apply to the Declaration.

In *Jennings v. Bindseil*, the Austin court of appeals considered whether current statutory definitions of "manufactured home" and "mobile home" were applicable to use restrictions in a 1978-dated deed that prohibited the use of "mobile homes" on a property. 258 S.W.3d 190, 195–96 (Tex. App.—Austin 2008, no pet.). The court analyzed Texas Occupations Code § 1202.253, which concerns municipal regulation of industrialized or modular housing and excludes the applicability of the section to deed restrictions. *Id.* at 196; *see* TEX. OCC. CODE ANN.

§ 1202.253(f)(2) (stating that § 1202.253 "does not . . . affect deed restrictions."). The court found that the language in subsection (f)(2) "makes it clear that the legislature recognized the existence of deed restrictions prohibiting factory-built housing and indicated a clear intention that such restrictions were to remain unaffected by subsequent regulatory and statutory distinctions." *Jennings*, 258 S.W.3d at 196.

The court ultimately applied the common and ordinary meaning of "mobile home" at the time the covenant was drafted, reasoning in part that to allow legislative changes in the definition of "mobile home" to affect deed restrictions "would essentially require drafters of restrictive covenants to foresee an infinite array of technological advances that might take place in the future and draft a restriction prohibiting structures described by terminology that does not yet exist," which would render restrictive covenants "meaningless if they could be implicitly subverted by legislatively changing the name of that which is prohibited." *Id.* (quoting *Dempsey v. Apache Shores Prop. Owners Ass'n, Inc.*, 737 S.W.2d 589, 593 (Tex. App.—Austin 1987, no writ)).

In the trial court and on appeal, Cypress Springs argues that the same reasoning in *Jennings* regarding § 1202.253 also applies to §§ 1201.003 and 1201.004, such that the statutory definitions of "manufactured home" and "mobile home" do not apply to restrictive covenants like those contained in the Declaration. Cypress Springs further contends that under *Jennings*, the commonly understood meaning of those terms at the time of the Declaration's drafting should apply. We agree that the same rationale expressed in *Jennings* applies to the terms "mobile home" and "manufactured home" as they are defined in § 1201.003 and as they operate within § 1201.004. As the Austin court expressed, to hold otherwise would be to allow legislative changes to the definitions of terms within restrictive deeds or covenants to render the operation of such deeds or covenants meaningless and practically unenforceable. *See id.* As such, we must look to the

commonly understood and accepted meaning of the terms "mobile home" and "manufactured home" in 1993, the time Cypress Springs drafted the Declaration. *See id.*; *see also Wilmoth*, 734 S.W.2d at 657–58.

**C.    The evidence is sufficient to establish the Georges' violation of § 3.01 of the Declaration**

Here, Question One of the jury charge asked the jury to determine whether the Georges "violated Article III, Section 3.01 of the Declaration by placing the structure on their lot[,]" and the charge included the relevant language from § 3.01. The charge did not provide a statutory definition for "mobile home" or "manufactured home," but instead provided that the jury was to "apply the common and ordinary meaning to any such word or term" that did not have a specific legal definition. The charge further instructed the jury that although they must accept that government-controlled enterprises have defined the terms "mobile home" and "manufactured home" through their underwriting publications, the jury was not bound to accept those definitions and could give "whatever weight [they felt was] appropriate to these two definitions if they help[ed] them] to determine the purpose and intent of how the words 'mobile home' and 'manufactured home' are used in the Declaration." Finally, the charge provided: "You are instructed that if [Cypress Springs] was required under the Declaration to grant approval of the George[s'] structure, then the structure is not a violation." Thus, the charge asked the jury to determine whether the house violated § 3.01 of the Declaration by constituting a "mobile home" or "manufactured home," but did not provide an express definition for those terms and allowed the jury to apply the commonly understood meaning to those terms. And as Cypress Springs contends, from these instructions the jury necessarily had to find that the Georges' house was a mobile home or

manufactured home prohibited by § 3.01 of the Declaration that had been installed without approval by the ACC.

Besides Wieter's testimony set forth above, Cypress Springs presented testimony from several persons who described the Georges' house following its installation. Michele Runnels, an ACC member, testified that she saw the structure and determined that it could not be approved by the ACC because it was a "mobile home," not permanently installed. Curt Geist, a former Cypress Springs Board of Directors member, testified that he reviewed photographs of the house and concluded that it was a "mobile home." Michelle Grell, the Cypress Springs Board of Directors President, testified that the house did not fit within the general architectural aesthetic of other homes within the development. Grell recalled that after she was informed of the house, she became part of a group sent by the Board of Directors to inspect the house. When she saw the house, Grell concluded that it was a "factory-built structure."

Raphael Arias, an engineer hired by the Georges to prepare permanent foundation plans for the house, testified that the Georges set plastic pads on the ground to the support concrete cinder blocks upon which the house was resting. Arias recalled that Thomas began to install hurricane straps to support the foundation, but because he did not place all the straps, the house did not have a completed foundation and was thus capable of being moved. Arias stated that he observed wood beams supporting the house underneath the crawl space. Arias last saw the house approximately one week before trial commenced.[3] Moreover, Thomas testified at trial that although the house lacked a chassis, axles, or wheels, he acknowledged that the house had corrugated metal and cedar wood siding.

---

[3] Although Arias could not recall with certainty the exact date he last saw the house, the jury as fact finder was free to credit his testimony that he had last seen the house approximately one week before trial commenced. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

Finally, Cypress Springs presented multiple photographs of the house at issue. These photographs showed that the house had exposed pipes and other utilities connections, was resting above the ground on wooden beams and concrete cinder blocks that created a crawlspace, had corrugated steel exterior walls and panel wood sidings, and included what appear to be manufacturer's labels attached to the exterior walls.



From the evidence in the record, we find the evidence is legally and factually sufficient to establish that the Georges' house fit the description of a "mobile home" or "manufactured home" within the commonly understood meaning of those terms at the time the Declaration was drafted. The record demonstrates that the house at issue was rectangular in shape, manufactured with corrugated metal walls, and was of the type of structure that could be transported easily and rested upon something other than a permanent foundation. Testimony from witnesses and photographs established that the house was resting on concrete cinder blocks and was not in contact with the

ground, creating a crawlspace underneath the bottom of the house. And from Wieters' testimony regarding his first encounter with the house, the evidence also suggested that the Georges purchased the house as a complete unit from a builder, that the builder had sold many others like it in the same neighborhood, and that it had been shipped to the Georges' property on a trailer borne by a semi-truck. Further, Arias's testimony also showed that the house still lacked a permanent foundation up to perhaps one week before trial.

Thus, the evidence suggests that the Georges' house was of the type of structure that was manufactured and could be easily moved and occupied without a permanent foundation. Given the broad definitions that courts have recognized regarding "mobile homes" and "manufactured homes" when applied in the context of restrictive covenants, the jury could have reasonably found that the Georges' home constituted a mobile home or manufactured home within the meaning of the Declaration. *See Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 288 (Tex. App.—San Antonio 1999, pet. denied) (recognizing that "[c]ourts who have considered the scope of restrictive covenants prohibiting 'mobile homes' and 'trailers' have uniformly construed the definitions broadly"). We conclude that more than a scintilla of evidence supports the jury's finding, and the finding is supported by sufficient evidence as to not be clearly wrong or manifestly unjust. *See, e.g.*, *Bullock v. Kattner*, 502 S.W.2d 828, 829 (Tex. App.—Austin 1973, writ ref'd n.r.e.) (mobile home with wheels removed, placed on blocks, and connected to utilities was a "trailer" within the context of a restrictive covenant prohibiting trailers from being used as a temporary or permanent residence as a matter of law).

**C.**    **The evidence is sufficient to establish the Georges' violation of § 4.01(a) of the Declaration**

Question Two of the jury charge asked the jury: "Do you find beyond a preponderance of the evidence that the [Georges] violated Article IV, Section 4.01(a) of the Declaration by placing the structure on their lot?" The charge included the same language from § 4.01(a) of the Declaration recounted above. Thus, Question Two required the jury to determine whether the Georges violated § 4.01(a) by failing to get approval from the ACC prior to installing the house.

The evidence is also legally and factually sufficient to establish that the Georges violated § 4.01(a). No evidence in the record suggests that the Georges ever had approval from the ACC or the Board of Directors to install the house. Instead, Wieters testified that when he first saw the house and met Thomas, he expressed doubt to Thomas that the house would be approved by the ACC. Runnels, an ACC member, also testified that she saw the structure and determined that it could not be approved by the ACC because it was a mobile home that had not been permanently installed on the property. Grell recalled that the Board of Directors voted to send a violation notice to the Georges regarding the house and that the Board issued a cease-and-desist letter approximately one month later. Grell stated that the Board had asked the Georges to cease installation of the house, but the Georges continued to install it. The Board subsequently agreed to commence this lawsuit. And at trial, Cypress Springs presented multiple letters and communications from the Board to the Georges stating that their house had not been approved for installation and requesting its removal. Thus, more than a scintilla of evidence supports the jury's finding that the Georges failed to acquire approval from the ACC to install the house, and the finding is supported by sufficient evidence as to not be clearly wrong or manifestly unjust.

Accordingly, we overrule the Georges' second and fifth issues.

16

## V.  JURY CHARGE

In their third and fourth issues, the Georges argue that the trial court abused its discretion by refusing their request for jury instructions regarding (1) Cypress Springs being required to provide the Georges an opportunity to cure the alleged violations of the Declaration, and (2) whether Cypress Springs "acted in an arbitrary and capricious manner in denying [the Georges'] application to have the dwellings on [their] property approved by the [ACC]." The Georges cite no legal authority in support of these arguments.

TEX. R. APP. P. 38.1(i) states that an appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Although we are to construe appellate briefs liberally, a party's failure to provide citations to applicable legal authority in support of an appellate claim may result in waiver of the claim. *See Vaclavik v. Addison*, No. 03-19-00528-CV, 2021 WL 1704249, at *1 (Tex. App.—Austin Apr. 30, 2021, no pet.) (mem. op.). Although the Georges' brief contains citations to the appellate record in support of their claims, they have provided no citations to applicable legal authority. Neither have they provided any basis for the necessity for an instruction regarding a notice and cure requirement, nor any legal authority to support their claim that an "arbitrary and capricious" instruction was warranted. We therefore conclude that there is no basis for review of these contentions. *See* TEX. R. APP. P. 38.1(i); *Vaclavik*, 2021 WL 1704249, at *1.

Accordingly, we overrule the Georges' third and fourth issues.

## VI.  FINDINGS OF FACT IN JUDGMENT

Finally, the Georges argue in their sixth issue that the trial court erred by including findings of fact on issues not submitted to the jury. Although the Georges cite no basis for this Court to reverse or modify the trial court's judgment, we will construe their argument to mean that the trial

17

court abrogated the jury's fact finder role by permitting broad-form jury charges on the questions submitted to the jury.

The trial court has broad discretion in determining what instructions are necessary and proper when submitting issues to the jury. *Dempsey*, 737 S.W.2d at 594. To that end, a trial court does not abuse its discretion by refusing a request to include an instruction that is not necessary to enable the jury to decide an issue. *Id.* (citing TEX. R. CIV. P. 277) Texas courts have long favored broad-form jury charges, and Rule 277 expressly provides that "[i]n all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions. The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277; *see Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012).

Here, the trial court issued a jury charge that was properly in broad form. Question One of the jury charge asked: "Do you find by a preponderance of the evidence that the [Georges] violated Article III, Section 3.01 of the Declaration by placing the structure on their lot?" This question was followed by the relevant language from § 3.01. Question Two asked: "Do you find by a preponderance of the evidence that the [Georges] violated Article IV, Section 4.01(a) of the Declaration by placing the structure on their lot?" This question was also followed by the relevant language from § 4.01(a). Thus, the trial court's questions were properly in broad form, and no abuse of discretion occurred with regard to the trial court's instructions. Moreover, to the extent that the Georges argue that the trial court was required to issue an instruction regarding the statutory definitions of "manufactured home" and "mobile home," we hold that the court was not required to do so because, as we explain above, those definitions did not apply to this case, and thus the definitions were not required to enable the jury to properly decide the issues in this case. *See* TEX. R. CIV. P. 277; *see also Dempsey*, 737 S.W.2d at 594 (trial court was not required to issue

instructions regarding the rules of construction regarding a covenant's interpretation because the instruction was unnecessary to the jury's determination of whether a structure constituted a mobile home).

Accordingly, we overrule the Georges' sixth issue.

## VII. CONCLUSION

We affirm the trial court's judgment.

LISA J. SOTO, Justice

March 17, 2023

Before Rodriguez, C.J., Soto, J., Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (sitting by assignment)