**PEBBLE BEACH PROPERTY OWNERS' ASSOCIATION,**
Appellant,

v.

**Connie SHERER, Appellee.**

No. 04–98–00650–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 27, 1999.

Opinion Granting Rehearing in Part and
Denying Rehearing in Part April 28, 1999.

Christopher J. Weber, Law Office of Christopher J. Weber, L.L.C., Bruce J. Mery, Law Office of Bruce J. Mery, San Antonio, for appellant.

William F. Stolhandske, Robert Roy Hamilton, San Antonio, for appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

PHIL HARDBERGER, Chief Justice.

The Pebble Beach Property Owners' Association (PBPOA) appeals an adverse ruling on three restrictive covenants issues. Specifically, PBPOA complains that the trial court erred in three respects: 1) finding that PBPOA had waived the restrictive covenant barring manufactured homes; 2) finding that the structure appellee Connie Sherer erected on her property in Pebble Beach was not subject to the restrictive covenants; and 3) finding that PBPOA was equitably estopped from enforcing the restrictive covenants because it acted in bad faith attempting to enforce the restrictive covenants. In a cross-point, Sherer argues that the trial court erred by awarding Allan Smith, president of PBPOA, attorney's fees on her counterclaim that Smith violated restrictive covenants. We reverse the judgment of the trial court and remand for a new trial consistent with this opinion.

## I.

Pebble Beach is a subdivision located in Bandera County governed by the Pebble Beach Property Owners' Association. Its Declaration of Covenants, Conditions, and Restrictions was duly recorded in Bandera County in 1984, as were the bylaws of the PBPOA. On June 1, 1997, Connie Sherer purchased two lots in Pebble Beach, subject to the Declaration. The Declaration provides that "[n]o house trailers of any kind may be moved onto the property" and that "[n]o structure of a temporary character, trailer, motor home, mobile home, basement, tent, shack, garage, barn, or other outbuilding shall be used on any Lot at any time as a residence, either temporary or permanent." Finally, the Declaration requires prior written approval of the Architecture Control Committee before a building or structure can be erected or constructed.

Sherer took steps to purchase a double-wide trailer to be placed on her two lots on or around June 17, 1997. When a resident noticed the septic tank being installed on her property, the resident informed her of the need to secure prior approval for her structure. Sherer presented her plans to the PBPOA Board of Directors, who also served as the Architecture Control Committee. In a letter dated August 17, 1997, Sherer's plan to place the trailers on her lots was denied. Believing that Sherer was nonetheless planning to proceed with installing the trailer, PBPOA moved for a temporary restraining order and injunction to enjoin her from placing a double-wide mobile home on her two lots in the subdivision, asserting that the restrictive

covenants contained in the Declaration prohibited such structures.

On August 24, 1997, a hearing was held on the temporary injunction, where Smith appeared *pro se* on behalf of PBPOA. At the hearing, Sherer argued that the structure she was planning to install was a HUD-code manufactured home, and not a mobile home, and thus was not restricted by the covenants contained in the Declaration. Without an attorney present on Smith or PBPOA's behalf, Sherer's attorney called Smith to the stand, and questioned him at length about the restrictive covenants. At the close of Smith's testimony, the judge made statements to the effect that he had no choice but to deny the injunction, and encouraged the parties to engage in settlement-type discussions during a recess of the hearing. After the recess, the judge announced on the record that he was going to dissolve the TRO, deny the injunction PBPOA sought, and permit Sherer to place her mobile home on the property. Sherer's attorney asked Smith if he "had a problem with that," to which Smith replied "No." Sherer signed a purchase contract for her mobile home on September 3, 1997.

An interlocutory judgment denying the temporary injunction, purporting to memorialize the court's rulings on the record, was signed on October 3, 1997. The court's order stated that the parties announced that a settlement had been reached and that PBPOA "waives and abandons its claim for relief to prevent Defendant Connie Sherer from moving her HUD–Code Approved Manufactured Home onto her property and she is allowed to place said home on her lot in the Pebble Beach Subdivision." This judgment was not agreed to or approved by Smith or PBPOA, and erroneously stated that the parties had announced that a settlement had been reached. In fact, the record from the hearing does not reveal any such pronouncement of a settlement or its purported terms.

PBPOA, somewhat tardily, retained an attorney, and brought a declaratory judgment action against Sherer to enforce the restrictive covenants. Sherer then filed a counterclaim against Allan Smith, president of PBPOA, alleging that Smith himself was in violation of the restrictive covenant prohibiting a business from being operated from a home in Pebble Beach.

In a pretrial hearing held on November 24, 1997, the trial court was faced with the issue of the effect of the prior interlocutory judgment from the temporary injunction proceedings on the declaratory judgment action. After much discussion about the effect of the judgment, the trial court ruled that it would not disturb the previous judgment to the extent that it dissolved the TRO and denied the temporary injunction sought by PBPOA, but that a trial on the merits would be held as to all matters contained in the original pleadings; that is, the scope of the restrictive covenants and Sherer's cross-action. Upon a bench trial, the trial court entered, in pertinent part, the following findings of fact:

1) the Declaration as filed applied to the lots owned by Sherer, it prohibited mobile homes, and Sherer was bound by it;

2) the Board of Directors of PBPOA held itself out as having the authority to approve or disapprove Sherer's construction plans, and it denied her plans;

3) Sherer moved forward with the purchase of the manufactured home in reliance on the dissolution of the TRO and statements made by the PBPOA president;

4) Sherer had several contacts with members of the PBPOA Board after the injunction hearing, but they did not indicate that they planned to pursue further legal action;

5) Out of the 800 lots in Pebble Beach, of which most residences are situated on multiple lots, there are approxi-

mately 14 trailers, mobile homes, and manufactured homes.

Accordingly, the trial court entered the following conclusions of law:

1) PBPOA had waived the restrictive covenant regarding Sherer's manu-factured home by its past actions;

2) PBPOA acted in bad faith in seeking to enforce the restrictive covenants, and is equitably estopped from en-forcing them as to Sherer;

3) Sherer's structure or substantially similar structures are not barred by the restrictive covenants;

4) Smith, as a counter-defendant, was entitled to $2000 in attorneys' fees pursuant to section 5.006 of the Texas Property Code.

## II.

The issues raised on appeal by PBPOA are: 1) did the trial court err in classifying the manufactured home outside the scope of the restrictive covenants; 2) if so, did the trial court err in finding a waiver of the restrictive covenants; and 3) if so, did PBPOA act in bad faith such that it is equitably estopped from enforcing the cov-enants. In a cross-point, Sherer argues that the trial court erred in entering an award of attorneys' fees for Smith because the Texas Property Code does not allow the defending party in an action to enforce a restrictive covenant to recover attorneys' fees.

■ Conclusions of law are reviewa-ble *dè novo* when attacked as erroneous as a matter of law. *Swate v. Medina Com-munity Hosp.*, 966 S.W.2d 693, 697 (Tex. App.—San Antonio 1998, writ denied). In-correct conclusions of law will not require reversal if the controlling findings of facts will support a correct legal theory. *Id.* Therefore, conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

■ The trial court filed findings of fact and conclusions of law in the instant case. While findings of fact issued in a bench trial have the same force and dignity as a jury's verdict, the trial judge's findings of fact are not conclusive when there is a complete statement of facts in the record. *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex.App.—San Antonio 1995, writ de-nied); *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] ), writ ref'd n.r.e. per curiam, 699 S.W.2d 199 (Tex.1985). Since the rec-ord contains an entire statement of facts, we are not bound by the trial court's find-ings. *Tucker*, 908 S.W.2d at 532.

### A. MANUFACTURED HOME V. MOBILE HOME

■ In its first point of error, PBPOA argues that the trial court erred in finding that Sherer's home was not a mobile home within the scope of the restrictive cove-nants as outlined in the Declaration. Sherer responds by asserting that her home is a HUD-code manufactured home, not a mobile home, and that it was not the intent of the drafters of the Declaration to exclude double-wide manufactured homes.

■ Restrictive covenants are subject to the general rules of contract construc-tion. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex.1998). Whether restrictive covenants are ambiguous is a question of law. *Id.* Courts must examine the cove-nants as a whole in light of the circum-stances present when the parties entered the agreement. *Id.; see Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997). Like a contract, covenants are "unambiguous as a matter of law if [they] can be given a definite or certain legal meaning." *Pilarcik*, 966 S.W.2d at 478; *Grain Dealers*, 943 S.W.2d at 458. On the other hand, if the covenants are susceptible to more than one reasonable interpretation, they are ambiguous. *Pi-larcik*, 966 S.W.2d at 478; *see Grain Deal-ers*, 943 S.W.2d at 458.

Covenants restricting the free use of land are not favored by the courts, but when they are confined to a lawful purpose and are clearly worded, they will be enforced. *Wilmoth v. Wilcox,* 734 S.W.2d 656, 657 (Tex.1987); *Davis v. Huey,* 620 S.W.2d 561, 565 (Tex.1981). All doubts must be resolved in favor of the free and unrestricted use of the premises, and the restrictive clause must be construed strictly against the party seeking to enforce it. *Wilmoth,* 734 S.W.2d at 657. The words used in the restriction, and the restriction as a whole, may not be enlarged, extended, stretched or changed by construction. *Wilmoth,* 734 S.W.2d at 657; *Gilbert v. Shenandoah Valley Improvement Ass'n,* 592 S.W.2d 28, 29 (Tex.Civ. App.—Beaumont 1979, no writ). Rather, the words and phrases used in the covenant will be given their commonly accepted meaning. *Wilmoth,* 734 S.W.2d at 657; *Curb v. Benson,* 564 S.W.2d 432, 433 (Tex. Civ.App.—Austin 1978, writ ref'd n.r.e.). The words used in the restrictive covenant must be given the meaning which they commonly held as of the date the covenant was written, and not as of some subsequent date. *Wilmoth,* 734 S.W.2d at 657.

*Wilmoth* resolves the ambiguity issue and controls our disposition on this point of error. In *Wilmoth,* the Texas Supreme Court held that the terms "mobile home" and "manufactured home" are interchangeable for purposes of deed restrictions, and a prohibition on one is a prohibition on the other. 734 S.W.2d at 658. The dispute in *Wilmoth* arose when a homeowner's association brought suit against Wilcox to require her to remove the double-wide manufactured home she had placed on her lot. *Id.* at 657. Wilcox had joined the two units, removed the axles and wheels, placed a skirt around the perimeter, and attached a covered porch to the unit. *Id.* The restrictive covenants governing her lot contained an express prohibition on "tents, house trailers or temporary structures." *Id.*

Wilcox argued that her unit was not a "house trailer" as defined by the covenants, but rather a "manufactured home," thus not prohibited by the restrictions. The Court disagreed, saying:

> The record shows that the term "house trailer" acquired an undesirable connotation resulting in a concerted effort by the industry to change its image. In the late 1960s the term "mobile home" began to replace the term "house trailer." In the late 1970s the industry applied the term "manufactured homes" to the products, replacing the name "mobile home." The Texas Manufactured Housing Standards Act, Tex.Rev.Civ. Stat. Ann. art. 5221f (Vernon 1987), section 3(a) defines the term "mobile home" and section 3(u) defines the term "HUD–Code manufactured home." The definitions are identical except that a mobile home was constructed prior to June 15, 1976, and a manufactured home is one constructed subsequent to June 15, 1976, according to the Rules of the United States Department of Housing and Urban Development. This is essentially a distinction without a difference.

*Id.* at 658.

*Dempsey v. Apache Shores Property Owners Association,* 737 S.W.2d 589, 594 (Tex.App.—Austin 1987, no writ), arrives at the same conclusion. As it existed at the time *Dempsey* was decided (and as it existed at the time the Pebble Beach Declarations were drafted), the Manufactured Housing Standards Act provided, in pertinent part:

> "Mobile home" means a structure that was constructed before June 15, 1976, transportable in *one or more sections,* which, in the traveling mode, is eight body feet or more in width or 40 body feet or more in length, or, when erected on site, is 320 or more square feet, and which is built on a permanent chassis and *designed to be used as a dwelling with or without a permanent foundation* when connected to the required utilities,

and includes the plumbing, heating, air-conditioning, and electrical systems.

TEX.REV.CIV. STAT. ANN. art. 5221f § 3(a) (Vernon 1987) (emphasis added).

"Manufactured housing" or "manufactured home" means a HUD-code manufactured home or a mobile home and collectively means and refers to both.

TEX.REV.CIV. STAT. ANN. art. 5221f § 3(a) (Vernon 1987).

"HUD-code manufactured home" means a structure, constructed on or after June 15, 1976, according to the rules of the United States Department of Housing and Urban Development, transportable in *one or more sections,* which, in the traveling mode, is eight body feet or more in width or 40 body feet or more in length, or, when erected on site, is 320 or more square feet, and which is built on a permanent chassis and *designed to be used as a dwelling with or without a permanent foundation* when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems.

TEX.REV.CIV. STAT. ANN. art. 5221f § 3(u) (Vernon 1987) (emphasis added).

This section shall not affect the validity of any deed restriction that is otherwise valid.

TEX.REV.CIV. STAT. ANN. art. 5221f § 4A (Vernon 1987) (emphasis added); *Dempsey,* 737 S.W.2d at 592–93.

*Dempsey* held that, in light of the foregoing, the defendant failed to convince the court that manufactured homes cannot still be "mobile" homes within meaning of restrictive covenants because: 1) section 3(s) explicitly states that "mobile homes" may be referred to as "manufactured homes;" and 2) there is no specific language in either statute from which one could reasonably infer legislative intent to subvert express language of restrictive covenants inasmuch as section 4A provides that "[t]his section shall not affect the validity of any deed restriction that is otherwise valid." *Dempsey,* 737 S.W.2d at 593.

Courts who have considered the scope of restrictive covenants prohibiting "mobile homes" and "trailers" have uniformly construed the definitions broadly. *See, e.g., Lassiter v. Bliss,* 559 S.W.2d 353, 356 (Tex.1977) (finding that "trailer" is to be understood in its usual meaning regardless of whether it is referred to or described as "house trailer" or "mobile home"); *Gigowski v. Russell,* 718 S.W.2d 16, 20–21 (Tex.App.—Tyler 1986, writ ref'd n.r.e.)(holding that prohibition of "any kind of mobile home" included double-wide manufactured home which was finished out with foundation, skirt and added porches by concluding difference in nomenclature did not alter intention of framers of restrictive covenants, saying "[t]hat it is bigger, better, and more expensive than the great majority of the mobile homes of 1967 does not alter its character"); *Bullock v. Kattner,* 502 S.W.2d 828, 829 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.)(holding as matter of law that mobile home with wheels removed, placed on blocks and hooked to lights and water is trailer within scope of covenant proscribing trailers used as temporary or permanent residences).

*Wilmoth, Demsey,* and the cases they rely on squarely affirm the proposition that manufactured homes are within the purview of restrictive covenants similar to the one at issue. As a matter of law, we find that the restrictive covenant is not ambiguous and Sherer's manufactured home is within the scope of the restrictive covenant. PBPOA's first point of error is sustained.

**B. WAIVER**

In its second point of error, PBPOA argues that the trial court erred in finding that it had waived the restrictive covenant relating to mobile homes. Specifically, PBPOA asserts that it cannot be found to have waived this particular covenant as a matter of law when the number of variances in Pebble Beach is compared statistically with other cases which hold that

there has been no waiver. Sherer does not respond to this point of error on appeal.

■ The trial court found that the Declaration, as recorded, specifically prohibited mobile homes, and had not been amended to allow mobile homes. Therefore, if PBPOA had waived the restrictive covenant, such waiver must be implied. To establish an implied waiver, PBPOA's conduct or the Pebble Beach subdivision must fall under one of two distinct rules of law:

(a) homeowners have acquiesced to such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of a right to enforce it; or

(b) there has been such a change in the conditions in the restricted area or areas surrounding it that it is no longer possible to secure any substantial degree of the benefits sought to be realized through the covenants.

*Pilarcik*, 966 S.W.2d at 480; *Cowling v. Colligan*, 158 Tex. 458, 312 S.W.2d 943, 945 (Tex.1958); *Traeger v. Lorenz*, 749 S.W.2d 249, 250 (Tex.App.—San Antonio 1988, no writ). Among the factors to be considered when determining whether a waiver has occurred are the number, nature, and severity of any then-existing violations, any prior acts of enforcement of the restrictions, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. *Pilarcik*, 966 S.W.2d at 480; *Dempsey*, 737 S.W.2d at 595; *Finkelstein v. Southampton Civic Club*, 675 S.W.2d 271, 278 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.); *New Jerusalem Baptist Church, Inc. v. City of Houston*, 598 S.W.2d 666, 669 (Tex. Civ.App.—Houston [14th Dist.] 1980, no writ).

■ In order to establish waiver, Sherer bears the burden of proving that the PBPOA voluntarily and intentionally relinquished its right to enforce the restrictive covenants. *Dempsey*, 737 S.W.2d at 595; *see Massachusetts Bond. & Ins. Co. v. Orkin Exterm. Co.*, 416 S.W.2d 396, 401 (Tex.1967). To satisfy her burden, Sherer must prove the violations then existing were so extensive and material as to reasonably lead to the conclusion that the restrictions had been abandoned. *Dempsey*, 737 S.W.2d at 595; *Zent v. Murrow*, 476 S.W.2d 875, 880 (Tex.Civ.App.—Austin 1972, no writ). The failure to object to trivial violations does not preclude enforcement of the covenants. *Dempsey*, 737 S.W.2d at 595; *Cowling*, 312 S.W.2d at 946.

PBPOA asserts, and the trial court found, that out of approximately 800 lots in Pebble Beach, of which most residences are situated on multiple lots, there are approximately 14 trailers, mobile homes, and manufactured homes. Thus, violations of the covenant prohibiting mobile homes exist on 1.75% of the lots in Pebble Beach. In support of its argument that this is an insufficient number of violations to constitute a waiver of the restrictive covenant, PBPOA presents a relative statistical analysis of cases where the courts have found no waiver of a restrictive covenants. *See Dempsey*, 737 S.W.2d at 595(no waiver where 11 of 2,460 properties (.4%) violated covenants); *Tanglewood Homes Assoc. v. Henke*, 728 S.W.2d 39, 44 (Tex.App.— Houston [1st Dist.] 1987, writ ref'd n.r.e.)(no waiver where five violations existed in total of 560 properties (.89%)); *New Jerusalem Baptist Church*, 598 S.W.2d at 669 (finding no waiver where four violations in total of 169 properties (2.3%) existed); *Underwood v. Webb*, 544 S.W.2d 187, 190 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.) (waiver did not exist when two violations existed in total of 493 properties (.4%)). *But see Tanglewood Homes Ass'n*, 728 S.W.2d at 43 (holding, on allegation of separate violation, that eight violations of particular covenant in total of 56 properties (14.28%) supported finding of abandonment of restrictive covenant).

PBPOA's level of violations fits within the range where the courts have found that no waiver was effected. Sherer failed to prove the violations then-existing were so extensive and material as to reasonably lead to the conclusion that the restrictions had been abandoned. Considering the number, nature and severity of the existing violations, any prior acts of enforcement, and whether it is still possible to realize to a substantial degree the benefits sought to be obtained by way of the covenants, PBPOA has not yet reached the point where it is no longer possible to still realize the benefit sought to be obtained by the prohibition on mobile homes. We find, as a matter of law, that PBPOA has not expressly or impliedly waived the restrictive covenant prohibiting mobile homes. PBPOA's second point of error is sustained.

## C. Estoppel

■ In its third point of error, PBPOA argues that the trial court erred in finding that PBPOA is equitably estopped from enforcing the restrictive covenant because it acted in bad faith regarding enforcement of the restrictive covenant. Sherer does not respond to this point of error on appeal.

■ In order for Sherer to establish the defense of estoppel, the evidence must show deception by PBPOA. *Estate of Blardone v. McConnico*, 604 S.W.2d 278, 282 (Tex.Civ.App.—Corpus Christi), writ ref'd n.r.e. per curiam, 608 S.W.2d 618 (Tex.1980); *Dempsey*, 737 S.W.2d at 595–96. The following elements must be established: (1) false representation or concealment of material facts; (2) made with actual or constructive knowledge of the facts; (3) to a party without knowledge or the means to obtain knowledge of the real facts; (4) made with the intention that such misrepresentation or concealment should be acted upon; and (5) the party to whom it was made must have relied upon or acted upon it to his prejudice. *Schroeder v. Texas Iron Works*, 813 S.W.2d 483,

489 (Tex.1991); *Dempsey*, 737 S.W.2d at 595–96. The party relying upon estoppel has the burden of proof, and the failure to prove any one element is fatal. *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 838 (Tex.1968); *Dempsey*, 737 S.W.2d at 596.

Because the judge at the injunction hearing and the trial court made erroneous legal findings as to whether Sherer's manufactured home was a mobile home within the scope of the restrictions, and whether PBPOA had waived the restrictive covenant prohibiting mobile homes, we reverse the trial court to the extent that it relied on these erroneous conclusions of law in reaching its judgment on the estoppel issue. We remand this cause of action for a new trial on any estoppel factors, except waiver, brought forth by the parties.

## D. Attorneys' Fees

■ In her sole cross-point of error, Sherer argues that the trial court erred in awarding Allan Smith, president of PBPOA, $2,000 in attorneys' fees on her counterclaim. Sherer had countersued Smith, alleging that he had violated the covenant prohibiting a property owner from conducting a business from a home in Pebble Beach. Although there was testimony at trial about the scope of the business Smith conducted, and the permission he had received from PBPOA to do so, the trial court made no findings of fact on this issue. However, the trial court awarded Smith $2,000 in attorneys' fees in its conclusions of law, citing section 5.006 of the Texas Property Code.

■ In pertinent part, section 5.006(a) provides that, "[i]n an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorneys' fees in addition to the party's costs and claim." TEX. PROP. CODE ANN. § 5.006(a) (Vernon 1984). Only a party who successfully prosecutes a claim alleging breach of a restrictive cove-

nant is entitled to recover attorneys' fees. *Meyerland Community Improvement Ass'n v. Belilove,* 624 S.W.2d 620, 620–21 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Since Smith was the defending party, he is not entitled to recover attorneys' fees. *Id.* Sherer's cross-point of error is sustained.

### III.

Having found, as a matter of law, that a manufactured home is a mobile home within the scope of the restrictive covenant, that PBPOA had not waived the restrictive covenant, and that Smith is not entitled to attorneys' fees for defending a restrictive covenant claim, we reverse the judgment of the trial court and remand for a new trial consistent with this opinion on Sherer's estoppel claim.

### OPINION ON APPELLEE'S MOTION FOR REHEARING

The motion for rehearing filed by Connie Sherer is granted in part and denied in part. We withdraw our prior judgment in this matter and issue this supplemental opinion and judgment to grant the motion solely on the waiver issue presented, thus broadening the scope of the issues on remand to include both waiver and estoppel. We deny the motion to the extent that it challenges our prior holding that a manufactured home is a mobile home within the scope of the restrictive covenant at issue and our holding that the issue of estoppel should be remanded to the trial court for proceedings consistent with our prior opinion.

In our prior opinion, we held that *Wilmoth v. Wilcox,* 734 S.W.2d 656, 657 (Tex. 1987), controls the question of whether a manufactured home is a mobile home for purposes of the restrictive covenant. No doubt there are quality variations in mobile and manufactured homes, as there are in most properties. Nevertheless, the Texas Supreme Court has held that the term "mobile home" is interchangeable with the term "manufactured home" for these purposes, and we reaffirm our prior holding based on this precedent.

In our prior opinion, we held as a matter of law that Pebble Beach had not waived the restrictive covenant prohibiting mobile homes. The trial court found in its findings of fact that, out of the 800 lots in Pebble Beach, of which most residences are situated on multiple lots, there are approximately 14 trailers, mobile homes and manufactured homes. In its conclusions of law, the trial court held that Pebble Beach had waived the restrictive covenant regarding Sherer's manufactured home by its past actions. On appeal, the parties presented a relative statistical analysis of cases to support their competing claims that waiver did or did not occur. In our original opinion, we primarily relied on statistics to support our conclusion that Pebble Beach had not waived the restrictive covenant. On rehearing, we have reconsidered the importance of statistics to the ultimate determination of the waiver issue. While we acknowledge that there may be a legitimate question on lots versus structures which the trial court should consider on remand, we emphasize that statistics are simply one of many factors to be considered on the waiver issue, regardless of who they favor. On remand, the trial court should consider the number, nature, and severity of any then-existing violations, any prior acts of enforcement of the restrictions, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant when making its determination of whether a waiver was effected. *See Pilarcik v. Emmons,* 966 S.W.2d 474, 480 (Tex.1998); *Dempsey v. Apache Shores Property Owners Association,* 737 S.W.2d 589, 595 (Tex. App.—Austin 1987, no writ).

We have not changed our ultimate disposition. We have merely expanded the issues before the trial court on remand. We remand this cause of action for a new

trial consistent with this opinion and our prior opinion on Sherer's estoppel claim.