

NUMBER 13-12-00602-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

DOCTORS HOSPITAL AT
RENAISSANCE, LTD.,                                                      Appellant,

v.

CLAUDIA MEJIA,                                                          Appellee.

On appeal from the County Court at Law No. 2
of Hidalgo County, Texas.

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Garza and Longoria
Memorandum Opinion by Chief Justice Valdez

By one issue, appellant, Doctors Hospital at Renaissance, Ltd. ("DHR"), appeals the trial court's interlocutory order denying its motion to dismiss based on the failure of appellee, Claudia Mejia, to comply with the expert report requirements of chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(9), 74.351 (West 2011). We affirm.

## I. BACKGROUND

Mejia was injured in a slip-and-fall accident that occurred on a premises owned by DHR. It is undisputed that DHR is a healthcare provider and that Mejia was not a patient at DHR. Instead, Mejia was visiting her father, who was recovering from surgery. Mejia alleges that at DHR, she was directed by a DHR employee to walk on a freshly waxed walkway and was assured that it was safe. However, she fell and sustained injuries.

Mejia sued DHR, alleging among other things that appellant had failed to provide "a safe walking area," "adequate safety measures," "adequate safety procedures," "adequate safety training," and "reasonable safeguards for safety and protection of all patrons." Mejia further alleged that DHR had "failed to keep the premises in a reasonably safe condition" and that the condition of the premises was "unreasonably dangerous" and "unsafe."

Mejia did not file an expert report. DHR filed a motion to dismiss and for sanctions based on her failure to file an expert report. The trial court denied appellant's motion. This appeal ensued.

## II. ANALYSIS

### A.     Standard of Review

The denial of the motion to dismiss is reviewed for abuse of discretion. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). However, when the issue, as in this case, involves the applicability of chapter 74 to the plaintiff's claims and requires an interpretation of the statute, we apply a de novo standard of review. *Buck v. Blum*, 130

S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex. App.—El Paso 2001, pet. denied).

**B.    Applicable Law**

Chapter 74 of the Texas Civil Practice and Remedies Code entitles a defendant to dismissal of a healthcare liability claim if the defendant is not served, within 120 days of the date suit was filed, with an expert report showing that the claim has merit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).  The report must provide a fair summary of the expert's opinions as of the date of the report regarding:  (1) applicable standards of care; (2) the manner in which the care rendered by the healthcare provider failed to meet the standard of care; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *Id*. § 74.351(r)(6).

**C.  Discussion**

As a threshold matter, we must decide whether Mejia's asserted cause of action is a healthcare liability claim.  Whether a claim is a healthcare liability claim depends on the underlying nature of the claim being made, and artful pleading does not alter that nature. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010); *see Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005).  The foundations of analyzing this issue are "well established."    *Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 179 (Tex. 2012).

DHR and the dissent rely heavily on *Texas West Oaks Hospital, L.P. v. Williams* to support the conclusion that Mejia's cause of action is a healthcare liability claim.  In a 6–3 decision, the Texas Supreme Court held that a health care provider employee's (Williams) negligence claims against his former non-subscribing health care provider

3

employer (Texas West Oaks Hospital), for injuries he sustained following an altercation with a mentally-ill patient, were healthcare liability claims under the Texas Medical Liability Act. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.507 (West Supp. 2011). The court held, in part, that Williams's claims against West Oaks involved departures from the accepted standard of health care, and thus were healthcare liability claims. *See Tex. W. Oaks Hosp.*, 371 S.W.3d at 181; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

But the *West Oaks* Court did not end its analysis there. It also held that Williams's claims were healthcare liability claims under the "safety" prong of the definition of a healthcare liability claim. *See Tex. W. Oaks Hosp.*, 371 S.W.3d at 181 (citing TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) ("Health care liability claim" means a cause of action against a health care provider or physician for . . . [a] claimed departure from accepted standards . . . safety . . . which proximately results in injury to or death of a claimant . . . .). The Court recognized that, by including "safety" in the statutory definition of a health care liability claim, the Texas Legislature "'expanded the scope of the statute beyond what it would be if it only covered medical and health care,'" *Id.* at 183 (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005)), but that it was "not necessary to define the precise boundaries of the safety prong." *Id.* Although the precise boundaries of the safety prong remain undefined, the high court has acknowledged that they are not limitless. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) ("[I]t is apparent that the Legislature did not intend for standards of safety to extend to every negligent injury that might befall a patient. . . ."); *Diversicare*, 185 S.W.3d at 854 ("There may be circumstances that give

4

rise to premises liability claims in a healthcare setting that may not be properly classified as health care liability claims, but those circumstances are not present here."). The *West Oaks* Court also cited—without further elaboration—Chief Justice Jefferson's concurring and dissenting opinion in *Marks*[1] in which he observed that the "common meaning" of "safety" could encompass premises liability claims. *See Tex. W. Oaks Hosp.*, 371 S.W.3d at 186 (citing *Marks*, 319 S.W.3d at 674).[2]

The *West Oaks* decision stopped short of concluding that all premises liability claims involving a healthcare defendant are healthcare liability claims. 371 S.W.3d at 183. Instead, the court recognized a new type of healthcare liability claim—that is, one involving safety which is *indirectly* related to health care. Therefore, we apply *West Oaks* narrowly to govern cases that involve safety claims that are indirectly related to health care.[3]

The present case, however, does not fall into this category, and at least one of our sister courts shares this view. *See Good Shepherd Med. Ctr.—Linden, Inc. v. Twilley*, No. 06-12-00098-CV, 2013 WL 772136 (Tex. App.—Texarkana Mar. 1, 2013,

---

[1] Justices Green, Guzman, and Lehrmann joined Chief Justice Jefferson's concurrence and dissent. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 674 (Tex. 2010) (Jefferson, C.J., concurring and dissenting).

[2] We note that *Diversicare* and *Marks* are binding precedent and have not been expressly overruled.

[3] The dissent's second footnote suggests that our opinion today somehow abrogates or modifies the Texas Supreme Court's holding in *West Oaks*. We disagree. In no way does our opinion seek to modify or abrogate binding precedent. Instead, we merely conclude that *West Oaks* is distinguishable. If we believed that Mejia's claims in the present cause of action were indirectly related to health care, we agree that we would be bound to follow *West Oaks*. *See Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002). However, because we hold that *West Oaks* is inapplicable, it does not control this case.

5

pet. filed).[4]   In *Twilley*, an employee of Good Shepherd Medical Center sued the hospital for negligence related to two on-the-job injuries—first, a fall from the top portion of a ladder; and second, when he "tripped and fell over a mound of hardened cement on the hospital's premises."  *Id.* at *1.  After a year-long delay, Good Shepherd filed a motion to dismiss for failure to file an expert report.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).  The trial court denied the motion to dismiss, and the Texarkana Court affirmed.  *Twilley*, 2013 WL 772136, at *6–7.  In its decision, the *Twilley* Court held that *West Oaks* does not encompass safety claims that that "are completely untethered from health care."  *Id.* at *5.  We agree with that interpretation of *Texas West Oaks*. Furthermore, we ask the same hypothetical question posed by the *Twilley* Court:  does a suit against a health care provider for negligence in causing a car accident in a hospital parking lot involve a safety claim and thus requires a report from a healthcare expert?  We believe it would not, because a safety claim must "involve a more logical coherent nexus to health care."  *Id.* (noting that "[t]he simple fact that an injury occurred on a health care provider's premises is not enough" to bring a cause of action under the TMLA).

This view is also consistent with the Texas Supreme Court's interpretation of the legislative intent of the Texas Medical Liability Act.  Two months after the *West Oaks*

---

[4]   We recognize that the Fourteenth Court of Appeals recently held that a non-patient's slip and fall at a hospital is a health care liability claim under *West Oaks.  See Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at *2 (Tex. App.—Houston [14th Dist.], Mar. 19, 2013, no pet. h.) (mem. op.).  However, we find this case distinguishable.  In *Ross*, the claimant did not contest that her allegations were safety-related claims under the Texas Medical Liability Act.  *See Ross*, 2013 WL 1136613, at *2.  Instead, Ross asked the Houston court to "ignore" *West Oaks* because its application to her case would result in an absurd outcome.  *See id.*  Here, Mejia asserts that the Texas Medical Liability Act does not apply to her cause of action.  Furthermore, for the reasons stated in this opinion, we disagree with the Houston court that *West Oaks* is a "decision on point" to cases with factual backgrounds similar to Ross's and Mejia's.  *See id.*

opinion, the Texas Supreme Court noted in *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012), that it failed

> to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of medical care, or health care, or safety or professional or administrative services directly related to health care even though the conduct occurred in a health care context.[5]

Furthermore, the *Twilley* Court made the following observation regarding *Loaisiga*, which we share and find applicable today:

> If certain assault claims are excluded from the purview of the TMLA because such claims are inconsistent with "medical care, or health care, or safety or professional or administrative services directly related to health care," it is likewise logical to recognize that "safety" claims completely unrelated to health care are likewise excluded from the ambit of the legislated scope of the TMLA.

2013 WL 772136, at *5.

In this case, Mejia was not a DHR patient. Her claim arises from circumstances involving her visit to her father, who was a patient at DHR. Mejia alleges that at DHR, she was directed by a DHR employee to walk on a freshly waxed walkway and was assured that it was safe. As a result, she fell and sustained injuries. Based upon these allegations, we hold that the underlying nature of Mejia's claims is a "garden variety" slip-and-fall case, *see Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.

---

[5] Additionally, Justice Hecht made the following observation in his concurrence and dissent in *Loaisiga*:

> . . . [D]isagreements over the [Texas Medical Liability Act] expert report requirement, which is merely intended to weed out frivolous claims early on, have resulted in protracted pretrial proceedings and multiple interlocutory appeals, threatening to defeat the Act's purpose by increasing costs and delay that do nothing to advance claim resolution.

*Loaisiga*, 379 S.W.3d 248, 263–64 (Tex. 2012) (Hecht, J., concurring and dissenting) (internal citations omitted).

1998) (discussing the elements of a slip-and-fall cause of action), and are not claims involving departures from accepted standards of safety that are directly or indirectly related to health care.  *See Tex. W. Oaks Hosp.*, 371 S.W.3d at 200 n.7.  Further, Mejia's pleadings allege a straight-forward premises liability case and do not attempt to artfully plead out of the "umbrella" of the Texas Medical Liability Act.  *See id.* at 191 ("The standards for the conduct at issue, rather than the form of pleadings or identity of parties, are paramount in classifying HCLCs.").

Moreover, *West Oaks* held that "if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim."  *See id.* at 182.  In this case, Mejia does not need expert testimony to prove or refute the merits of her claims against DHR. Thus, "safety" claims like those pleaded by Mejia, which are completely unrelated to health care, are excluded from the scope of the TMLA.  *See generally Loaisiga*, 379 S.W.3d at 256 ("In some instances the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (*i.e.,* the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both."); *Twilley*, 2013 WL 772136, at *6.

We recognize that the Texas Supreme Court and our sister appellate courts have "repeatedly struggled" with the issue before us today.[6]  With that in mind, and without clearer guidance from the supreme court, we read the related cases narrowly and

---

[6] "Whether a claim against a health care provider is a health care liability claim is a knotty issue this Court has repeatedly struggled with."  *Loaisiga*, 379 S.W.3d at 265 (Lehrmann, J., concurring and dissenting) (internal citations omitted).

decline to expand the definition of a healthcare liability claim beyond what the legislature intended. Accordingly, DHR's sole issue is overruled.

## III. CONCLUSION

The trial court's denial of DHR's motion to dismiss is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Dissenting Memorandum Opinion
by Justice Nora L. Longoria.

Delivered and filed the
1st day of August, 2013.