

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00380-CV

**PRYOR LEGACY PROPERTIES, LLC**,
Appellant

v.

**RANCHES AT OVERHILLS PROPERTY OWNERS ASSOCIATION, INC.**,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 23-17275
Honorable Albert D. Pattillo, III, Judge Presiding

Opinion by:    Velia J. Meza, Justice

Sitting:       Irene Rios, Justice
               H. Todd McCray, Justice
               Velia J. Meza, Justice

Delivered and Filed: September 24, 2025

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

Pryor Legacy Properties, LLC ("Pryor") appeals the trial court's judgment granting Ranches at Overhills Property Owners Association, Inc.'s ("Association's") motion for summary judgment. We affirm in part, reverse and remand in part.

**BACKGROUND**

In the fall of 2020, Pryor sought to purchase property within Ranches at Overhills, a subdivision within Gillespie County, Texas. Desiring to install smart cottages[1] on its property, Pryor obtained a copy of the Declaration of Restrictions, Conditions, Easements, Covenants, Agreements, Liens, and Charges of Ranches at Overhills ("the Declaration") for review. Article II, Section I of the Declaration provided in pertinent part that "[t]here shall be no mobile homes installed on the property." Thus, Pryor sought the expertise of Oak Creek Homes, LLC's, a smart cottage manufacturer, to determine whether the Declaration's restriction against mobile homes applied to smart cottages. According to Pryor, Oak Creek Homes, LLC furnished information about manufactured and modular homes and stated that neither were considered mobile homes under Texas law. With this assurance, Pryor purchased a 10-acre lot within Ranches at Overhills (the "Property) on November 19, 2020.

Before the Association was formed, Pryor submitted the smart cottage's floor plan to Premier Land, the developer of Ranches at Overhills. Premier Land approved Pryor's submission. Following its formation, the Association requested that Pryor resubmit its build plan to Empire South Realty, the Association's designated management company, for formal review. As part of this process, Pryor was required to pay a $300 application fee. Upon completion of the review, the application was approved on February 3, 2022.

With the Association's approval in hand, Pryor proceeded to purchase a smart cottage, which was delivered to the Property on its chassis in September 2022. Shortly thereafter, the Association received multiple complaints from residents alleging that Pryor had placed a mobile

---

[1] Smart cottages are "a modern take on the tiny home . . . classic in design and can be customized and furnished to fit many needs." *Smart Cottage Decorating* Choices, AMERICAN HOMESTAR (Jul. 20, 2020), https://americanhomestar.com/smart-cottage-decorating-choices/. "Smart [c]ottages can be built to different building codes to fit municipal requirements and constructed as either a manufactured or modular home." *Id.*

home on the Property. In response, the Association issued a letter to Pryor stating that the placement of the smart cottage violated the Declaration. Despite efforts to resolve the matter, the parties were ultimately unable to reach an agreement. In the end, the Association sent a letter on December 21, 2022, directing Pryor to remove the smart cottage from the Property. Because Pryor did not remove the smart cottage, litigation ensued.

On February 2, 2023, the Association filed suit against Pryor alleging breach of the Declaration. In response, Pryor raised various affirmative defenses and counterclaims. On March 1, 2024, the Association moved for summary judgment on its claim, as well as on Pryor's affirmative defenses and counterclaims. The trial court granted the Association's summary judgment motion on May 6, 2024. This appeal followed.

### ANALYSIS

On appeal, Pryor raises four points of issue challenging the trial court's grant of the Association's summary judgment.[2]

1. Standard of Review

The grant of summary judgment is reviewed de novo. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curium). In our de novo review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019) (citation omitted).

---

[2] In its brief, Pryor raised a general point of error stating the "trial court err[ed] in granting Plaintiff's Motion for Traditional and No-Evidence Summary Judgment." However, Pryor's brief does not specify which claims, counterclaims, or affirmative defenses, on which summary judgment was granted it challenges. Thus, under our obligation to liberally construe briefs, we address Pryor's arguments to the extent which they are briefed and as we understand them. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008).

Under traditional motions for summary judgment, movants must demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (analyzing TEX. R. CIV. P. 166a(c)). "The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary[ ]judgment evidence." *Curry v. Harris Cnty. Appraisal Dist.*, 434 S.W.3d 815, 826 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

On the other hand, "[t]o defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements." *KMS Retail Rowlett, LP*, 593 S.W.3d at 181 (citation omitted). When the evidence produced by the non-movant "is so weak as to do no more than create a mere surmise or suspicion of fact," then such evidence is less than a scintilla. *Id.*

A hybrid motion for summary judgment containing both traditional and no-evidence grounds is permitted. *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004). "The substance of the motion and not its form or the attachment of evidence determines whether the motion is a no-evidence, traditional, or combined motion." *Coleman v. Prospere*, 510 S.W.3d 516, 518–19 (Tex. App.—Dallas 2014, no pet.) (citing *Binur*, 135 S.W.3d at 650–651).

### 2. Summary Judgment on the Association's Breach of Contract Claim

In two points of issue, Pryor contends that the trial court erred in granting summary judgment on the Association's breach of contract claim.

### 2.1 Pryor's Smart Cottage Is a Mobile Home Restricted By the Declaration

In its fourth point of issue Pryor argues that a genuine issue of material fact was raised to defeat summary judgment. Specifically, Pryor insists that the term "mobile home" as defined by

the Texas Occupation Code controls, and thus, its smart cottage is not restricted by the Declaration. We disagree.

Restrictive covenants are subject to the same general rules utilized in contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). Restrictive covenants are "unambiguous as a matter of law if they can be given a definite or certain legal meaning." *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 287 (Tex. App.—San Antonio 1999, pet. denied), *on reh'g in part* (Apr. 28, 1999). On the other hand, ambiguity exists if the covenant is susceptible to more than one reasonable interpretation. *Id.* "All doubts must be resolved in favor of the free and unrestricted use of the premises, and the restrictive clause must be construed strictly against the party seeking to enforce it." *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987) (citation omitted). "The words used in the restriction, and the restriction as a whole, may not be enlarged, extended, stretched or changed by construction." *Id.* (citation omitted). Instead, "undefined terms must be given their plain and ordinary meaning unless the document shows them to be used in a technical or different sense. *Bulverde Vill. Prop. Owners Ass'n v. Bulverde Vill. Homeowners Ass'n, Inc.*, No. 04-21-00518-CV, 2023 WL 1806843, at *3 (Tex. App.—San Antonio Feb. 8, 2023, no pet.) (internal quotation marks omitted); *see also Exxon Mobil Corp. v. Ins. Co. of State*, 568 S.W.3d 650, 657 (Tex. 2019) (holding that courts "afford contract language its plain, ordinary meaning, unless the instrument indicates terms have been used in a technical or specialized sense.").

The Declaration provided that "[t]here shall be no mobile homes installed on the property." Because the Declaration does not define "mobile homes," we may look to dictionaries to discern its meaning. *Legacy Estates, LLC v. Signal Hill Estates Homeowners Ass'n, Inc.*, 697 S.W.3d 165, 175 (Tex. App.—El Paso 2023, no pet.).

"Mobile," an adjective, is defined as being "[c]apable of movement; movable; not fixed or stationary." *Mobile*, SHORTER OXFORD ENGLISH DICTIONARY (6th ed. 2007). "Home," as a noun is defined as "[t]he place where one lives permanently, esp. as a member of a family or household; a fixed place of residence." *Home*, SHORTER OXFORD ENGLISH DICTIONARY (6th ed. 2007). As a special collocation, "mobile home" means "a large transportable structure, as a large caravan, set up permanently and used as living accommodation." *Mobile*, SHORTER OXFORD ENGLISH DICTIONARY (6th ed. 2007).

At the time the Declaration was executed, the Texas Occupation Code statutorily defined "mobile home" for its regulatory and consumer protection purposes. Section 1201.003 defines a "mobile home" as "a structure: (i) constructed before June 15, 1976; (ii) built on a permanent chassis; (iii) designed for use as a dwelling with or without a permanent foundation when the structure is connected to the required utilities; (iv) transportable in one or more sections; and (v) in the traveling mode, at least eight body feet in width or at least 40 body feet in length or, when erected on site, at least 320 square feet." TEX. OCC. CODE § 1201.003(2). The Occupation Code also defines a "HUD-code manufactured home" in the same manner as a "mobile home," except that they are "constructed on or after June 15, 1976, according to the rules of the United States Department of Housing and Urban Development." *Id.* § 1201.003(12).

In this case, the evidence attached to the Association's motion established that the smart cottage is a large, transportable structure. Such a structure falls within the plain and ordinary meaning of the term "mobile home." In contrast, Pryor contends that since its smart cottage is considered a HUD-code manufactured home under the Texas Occupation Code—rather than a mobile home—it is not subject to the Declaration. However, since the Declaration does not define

the term "mobile home" or indicate that the Texas Occupation Code's technical meaning is to be used, the plain and ordinary meaning of such term controls.

As such, we hold that Pryor's smart cottage is a mobile home restricted by the Declaration and overrule its fourth point of issue. *See Wilmoth*, 734 S.W.2d at 658 (holding the restrictive covenant's prohibition of "house trailers" applied to mobile home and manufactured homes); *see also Pebble Beach Prop. Owners' Ass'n*, 2 S.W.3d at 288 (determining that a restrictive covenant's restriction of "mobile homes" applied to HUD-code manufactured homes).

### 2.2 The Association's Approval of the Smart Cottage's Build Plan Raised a Genuine Issue of Material Fact

In its first point of issue, Pryor argues that the evidence of the Association's approval of its smart cottage's build plan raised a genuine issue of material fact to defeat summary judgment. We agree.

As is the case here, if Pryor seeks to rely on the affirmative defense of estoppel "to oppose the summary judgment motion, [it] must provide sufficient summary judgment evidence to create a fact issue on each element of the defense." *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citation omitted). As a result, Pryor was required to present sufficient evidence to raise a fact issue regarding its quasi-estoppel defense.[3] Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied).

Here, Pryor presented the Association's written approval of the smart cottage's build plan. After the smart cottage was purchased and placed on the Property, the Association acted contrary

---

[3] Although not specifically pled as quasi-estoppel, "[a] general plea of estoppel is sufficient to raise the affirmative defense of quasi-estoppel." *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 88 n.5 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

to its previous approval by demanding its removal. Because this evidence is sufficient to raise a genuine issue of material fact, the trial court erred in granting summary judgment in favor of the Association. We sustain Pryor's first point of issue.[4]

### 3. Summary Judgment on Pryor's Affirmative Defense of Estoppel

In its third point of issue, Pryor argues that the trial court erred in granting the Association's summary judgment over its affirmative defense of estoppel. We agree.

In its no-evidence motion, the Association points to evidence and argues that "Pryor cannot adduce sufficient evidence to create a question of material fact" on their affirmative defense of estoppel. Thus, in substance, this no-evidence motion is a traditional motion for summary judgment, and we will review it as such. *Garza v. Pullen*, No. 04-21-00201-CV, 2022 WL 2821084, at *2 (Tex. App.—San Antonio July 20, 2022, no pet.) (mem. op.).

Viewed in the light most favorable to Pryor, we find that the same evidence raised to oppose summary judgment on the Association's breach of contract claim raised a genuine issue of material fact as to its affirmative defense of estoppel. As such, we sustain Pryor's third point of issue.

### 4. Summary Judgment On Pryor's Negligence Counterclaim

In its second point of issue, Pryor argues that it raised a scintilla of evidence to defeat the Association's no-evidence summary judgment on its negligence counterclaim.

In substance, it appears that the Association's no-evidence summary judgment is a hybrid motion which asserts no-evidence and traditional grounds. Thus, we will review the no-evidence ground first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

---

[4] Since we found the trial court erred in granting summary judgment in favor of the Association's breach of contract claim, we must reverse trial court's award of attorney's fees, litigation costs, and injunctive relief.

### 4.1   The Association's No-Evidence Ground Is Legally Insufficient

Under its no-evidence ground, the Association was required to specify which elements of Pryor's negligence counterclaim had no evidence. *Saenz v. Martinez,* No. 04-07-00339-CV, 2008 WL 4809217, at *1 (Tex. App.—San Antonio Nov. 5, 2008, no pet.). In its motion, the Association simply asserts that "Pryor failed to adduce any evidence in support of its negligence claim." Thus, because the motion fails to state the elements of Pryor's negligence counterclaim as to which there is no evidence, it is legally insufficient to support a judgment. *Id.*

### 4.2   The Association's Traditional Ground Cannot Support the Summary Judgment

Moving on to the traditional ground, the Association was required to conclusively negate at least one essential element of Pryor's negligence counterclaim. *Brown v. Hearthwood II Owners Ass'n, Inc.*, 201 S.W.3d 153, 160 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). It appears from its motion that the only element of negligence the Association challenges is duty.

The existence of a duty "can depend on the facts of the case, whether a duty exists under a given set of facts is always a question of law for the court." *United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 638 (Tex. 2023). In its motion, the Association presented no evidence to establish the facts of this case and how it did not owe a duty. Instead, the Association—citing to no authority—asserts that "[t]he only duty a Texas homeowners association has is to uphold and enforce its governing documents." [CR 2:31] This "global, unsupported, and conclusory statement[] do[es] not satisfy the requirements for summary judgment under Rule 166a(c)." *Brown*, 201 S.W.3d at 160. "Because [the Association's] bare assertion does not conclusively establish the absence of a duty, this argument cannot support the summary judgment." *Id.*

Consequently, we hold the trial court erred in granting no-evidence summary judgment in favor of the Association on Pryor's negligence counterclaim.

5. <u>Summary Judgment Over the Remaining Causes of Actions/Affirmative Defenses</u>

On appeal the appellant must raise a "general point of error contending the trial court erred in granting summary judgment and . . . specifically challenge every ground raised in the motion for summary judgment." *Dempsey v. Health Care San Antonio*, No. 04-98-00589-CV, 1999 WL 15973, at *2 (Tex. App.—San Antonio Jan. 13, 1999, no pet.) (citing *Gamboa v. Shaw*, 956 S.W.2d 662, 665–66 (Tex. App.—San Antonio 1997, no pet.)). Because Pryor did not assign error to negate the grounds on which summary judgment could have been granted as to its tortious interference with property rights, breach of declaration, and declaratory judgment counterclaims, as well as its waiver and discharge due to the Association's breach of contract affirmative defenses, we conclude the summary judgment on these claims must stand. *Peterson, Goldman & Villani, Inc. v. Ancor Holdings, L.P.*, 420 S.W.3d 281, 287 (Tex. App.—El Paso 2013, pet. denied).

## CONCLUSION

The trial court erred in granting summary judgment in favor of the Association's on its breach of contract claim and on Pryor's affirmative defense of estoppel and negligence counterclaim. Because we have reversed the trial court's summary judgment as to the Association's breach of contract claim, we also reverse the trial court's award of attorney's fees, litigation costs, and injunctive relief based upon its determination that the Association was the prevailing party. Accordingly, we reverse and remand the Association's breach of contract claim, as well as Pryor's affirmative defense of estoppel and negligence counterclaim, to the trial court for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.

Velia J. Meza, Justice